[No. 1328-2.    Division Two.    December 19, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. ISABELLA WILDER, *Appellant.*

*Darrell Lee*, for appellant.

*Thomas Duffy*, for respondent.

PETRIE, J.—The defendant has appealed to this court from an order denying her motion in arrest of judgment or, in the alternative, for a new trial, following her conviction by jury verdict of the crime of grand larceny. The thrust of her argument in arrest of judgment is that the information does not charge the crime of grand larceny; it charges petty larceny only. In support of her alternative motion she asserts several trial errors which denied her a fair trial. The assignments of error raise the same issues. We consider, first, her contention that the information charged the crime of petty larceny only. .

The information alleged that on September 19, 1973, with intent to defraud the owner thereof, she feloniously *obtained cash* in excess of $25 from a merchant in Camas, Washington, by means of an insufficient funds check drawn upon a bank in Washougal, Washington, in the sum of $60—knowing that the maker or drawer thereof was not entitled to make or draw the same, all "in violation of RCW 9.54.010(2) and 9.54.090(5)."[1] She contends that the infor-

---

[1]RCW 9.54.010 provides, in relevant part:

"Every person who, with intent to deprive or defraud the owner thereof—

". . .

"(2) Shall *obtain* from the owner or another the possession of or title to any *property*, real or personal, by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not authorized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling; or

". . .

"Steals such property and shall be guilty of larceny." (Italics ours.)
RCW 9.54.090 provides in part:

"Every person who *steals* or unlawfully obtains, appropriates, brings into this state, buys, sells, receives, conceals, or withholds in any manner specified in RCW 9.54.010—

". . .

"(5) Property of the value of more than twenty-five dollars if obtained by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check, or draft was not authorized or entitled to make or draw the same; . . .

" . . . *shall be guilty of grand larceny* . . ." (Italics ours.)

mation was invalid on its face because the crime charged falls exclusively under the provisions of RCW 9.54.050,[2] the so-called gross misdemeanor "bad check" statute. *See Persinger v. Rhay*, 52 Wn.2d 762, 329 P.2d 191 (1958).

In support of her argument, Mrs. Wilder directs our attention to the recent case of *State v. Walls*, 81 Wn.2d 618, 503 P.2d 1068 (1972). The defendant in *Walls* was convicted of the crime of grand larceny for having obtained merchandise valued at $219.99 from an innkeeper by means of a fraudulent representation. The court held that the "defrauding an innkeeper" statutes, RCW 9.45.040 and RCW 19.48.110, were *special* statutes applicable to the subject matter of defrauding an innkeeper to the *exclusion* of the general larceny statutes.

Mrs. Wilder's contention that her crime falls exclusively within RCW 9.54.050 under the *Walls* decision, is clearly erroneous. RCW 9.54.050 is not a "special" statute in the *Walls* sense. Its purpose has been repeatedly enunciated:

> The gist of the offense under this section of the statute [RCW 9.54.050] is not the obtaining of something of value by fraud or by giving a worthless check . . . the gist of the statutory offense here in question being in drawing or delivering, with fraudulent intent, a check, knowing that no funds are on deposit to pay the same. The statute contains no provision to the effect that any property must be procured on or for the check. Such an offense is covered by another section of the criminal code.

*State v. Bradley*, 190 Wash. 538, 546, 69 P.2d 819 (1937).

---

[2]RCW 9.54.050 provides:

"Any person who shall with intent to defraud *make, or draw, or utter, or deliver* to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or depository, to meet said check, in full upon its presentation, *shall be guilty of larceny.* The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud." (Italics ours.)

*Accord, State v. Scherer,* 77 Wn.2d 345, 349-50, 462 P.2d 549 (1969); *Persinger v. Rhay, supra* at 767; *Jeane v. Smith,* 34 Wn.2d 826, 828, 210 P.2d 127 (1949); *Sorenson v. Smith,* 34 Wn.2d 659, 662-63, 209 P.2d 479 (1949).

If the value of the *property obtained* by a bad check is alleged in the information to be more than $25, the crime is grand larceny and constitutes a felony chargeable under RCW 9.54.090(5). *Persinger v. Rhay, supra* at 767. The information charged that Mrs. Wilder obtained *money* in excess of $25. Money is property. She was, therefore, properly charged under RCW 9.54.010(2) and RCW 9.54.090(5). The motion in arrest of judgment was properly denied.

■ We turn then to alleged trial errors. At trial, Mrs. Wilder was asked, without objection, what her husband had informed her about an outstanding warrant for her arrest. She contends that the prosecutor purposely violated RCW 5.60.060(1) and committed reversible error by even inquiring as to this communication between two spouses; the court, therefore, erred in denying her motion for a new trial. We disagree. The husband-wife privilege applies to actually successful confidential communications made between spouses. *Swearingen v. Vik,* 51 Wn.2d 843, 322 P.2d 876 (1958).

The record reflects that this conversation took place while Mr. and Mrs. Wilder were traveling to California in a crowded automobile with four adults and several children. There is no indication that it was intended to be a confidential communication, nor that it was successfully confidential. Therefore, it was not privileged. *State v. Grove,* 65 Wn.2d 525, 398 P.2d 170 (1965).

We turn next to the issue of whether or not the trial court properly excluded testimony of a Portland attorney because of the existence of the attorney-client privilege.

Many persons, including Mrs. Wilder, were apparently victimized by a man named Pat Martin, alias Pat De Martine. Mrs. Wilder's major defense to the charge of grand larceny was that Mr. Martin had convinced her that he had deposited $1,500 in her checking account. She testified to

that "fact." To corroborate her defense, and to establish the reasonableness of her belief, she sought to present the testimony of an attorney whom Mr. Martin had consulted in Portland, Oregon, purportedly to make a gift of $500,000 to the Wilders and to create a trust fund for his own children for $500,000. He discussed this matter in private with the attorney in the attorney's office for one-half hour and then called in the Wilders to make the announcement. This matter was then discussed in the presence of all four persons. The lawyer believed Mr. Martin and prepared the necessary documents. At trial the court refused to allow the attorney's testimony because of the attorney-client privilege, which Mr. Martin refused to waive.

The attorney-client privilege, RCW 5.60.060(2) protects communications made by the client in the course of the professional relationship.[3] This privilege is personal to the client. *State v. Sullivan,* 60 Wn.2d 214, 373 P.2d 474 (1962). If a statement is made in the presence of a third person, however, it is not confidential, and therefore not privileged. *State v. Sullivan, supra.* Both Mr. and Mrs. Wilder were present for a portion of the meeting between the attorney and Pat Martin. Any statements made during this portion of the meeting were not confidential and were not protected by the attorney-client privilege. The trial court erred in refusing to require that the attorney testify as to conversations and matters which took place in Mrs. Wilder's presence.

An error is grounds for reversal if it results in prejudice. *State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974). It is prejudicial if "the 'minds of an average jury' would . . . have found the State's case significantly less persuasive . . ." *Schneble v. Florida,* 405 U.S. 427, 432, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *State v. Krausse,* 10 Wn. App. 574, 519 P.2d 266 (1974).

---

[3]Neither party raised the issue that the "privileged" conversation took place in Oregon. However, even if we applied Oregon law, the results would be the same. *See* Ore. Rev. Stat. § 44.040(b) (1973); *Baum v. Denn,* 187 Ore. 401, 211 P.2d 478 (1949); *Minard v. Stillman,* 31 Ore. 164, 49 P. 976 (1897).

Knowledge of insufficient funds in Mrs. Wilder's checking account was a key element of the State's case. *See State v. Kaliman,* 10 Wn. App. 41, 516 P.2d 1096 (1973). Indeed, the State concedes that this was the most important issue before the jury. Mrs. Wilder, in her defense, stated that she honestly believed Mr. Martin had put $1,500 in her account. However, none of her defense was corroborated and the jury could well have believed the story to be either self-serving or unreasonable. The testimony of the attorney would have tended to corroborate part of her defense, lending possible credence to the uncorroborated portion. The State's evidence on the element of Mrs. Wilder's knowledge of the lack of funds was not so overwhelming that it would negate any impact the attorney's testimony might have had.

Upon an independent examination of the record, we find there is a reasonable possibility that, in the mind of the average juror, this improperly excluded evidence made the State's case significantly less persuasive and, therefore, reversal is required.

■ Lastly, we consider whether or not the trial court properly excluded the testimony of several defense witnesses who were called to testify about their own encounters with Mr. Martin. Mrs. Wilder was not a party to any of these incidents, nor were these witnesses present at any of her encounters with Mr. Martin. The relevancy of testimony is a matter within the discretion of the trial court. *State v. Schrager,* 74 Wn.2d 75, 80, 442 P.2d 1004 (1968). Out-of-court statements may be pertinent to prove the mental or emotional state or condition of the person who heard them. *Brown v. Coca-Cola Bottling, Inc.,* 54 Wn.2d 665, 344 P.2d 207 (1959). However, this rule applies to the state of mind of the *person hearing the statement* and has not been extended to show the state of mind of a person who was not a witness to the statement. Determination of the relevancy of the evidence, which these witnesses could

supply, was clearly within the trial court's discretion and we find nothing to indicate the court abused that discretion.

Judgment reversed and this cause remanded for new trial.

PEARSON, C.J., and ARMSTRONG, J., concur.