[No. 33961-3-I. Division One. August 15, 1994.]

MICHELL REDDING, *Appellant,* v. VIRGINIA MASON MEDICAL CENTER, *Respondent.*

---

*John Thomas Costo,* for appellant.

*Philip J. VanDerhoef, Mary H. Spillane,* and *Williams, Kastner & Gibbs,* for respondent.

BECKER, J. — Tracy and Michell Redding were married in 1986. In connection with domestic violence charges in May 1989, the District Court ordered Tracy, the husband, to undergo anger management counseling. Dr. Arden Snyder of the Virginia Mason Medical Center involved Michell in five joint counseling sessions with Tracy as part of Tracy's treatment. Dr. Snyder's written report to the District Court mentioned Michell's drinking as a factor contributing to Tracy's anger.

Later, Michell petitioned for dissolution of the marriage. A custody battle ensued. Michell denied having ever said that she had an alcohol problem. Tracy asked Virginia Mason for

copies of the records of the joint sessions. He wanted the court to see that Michell had admitted to Dr. Snyder that she had an alcohol problem. Virginia Mason released the records to Tracy without subpoena and without Michell's consent. Michell later sued Virginia Mason for emotional distress damages caused by breach of the psychologist-patient privilege.

The trial court granted Virginia Mason's motion for summary judgment. We affirm, but on narrower grounds than Virginia Mason advocates. Analogizing to the attorney-client privilege, we hold that in litigation arising between the joint patients the psychologist-patient privilege does not protect statements made by one of them to a therapist during a joint counseling session.

## I

■■ In reviewing a summary judgment, the appellate court must draw all reasonable inferences from the pleadings, affidavits, depositions and admissions in the light most favorable to the nonmoving party. *Hemenway v. Miller*, 116 Wn.2d 725, 731, 807 P.2d 863 (1991). The reviewing court considers all facts submitted, engaging in the same inquiry as the trial court, *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993), and may affirm on any basis supported by the record. *Hadley v. Cowan*, 60 Wn. App. 433, 444, 804 P.2d 1271 (1991). It is unnecessary for the trial court to enter findings on summary judgment. CR 52(a)(5)(B). Any that are entered may be disregarded on appeal, because summary judgment determines issues of law, not issues of fact. *Duckworth v. Bonney Lk.*, 91 Wn.2d 19, 586 P.2d 860 (1978). The moving party bears the burden of showing the absence of a material issue of fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395, 823 P.2d 499 (1992).

Michell relies on the statutory psychologist-patient privilege, which reads:

> Confidential communications between a client and a psychologist shall be privileged against compulsory disclosure to the same extent and subject to the same conditions as con-

fidential communications between attorney and client, but this exception is subject to the limitations under RCW 70.96A.140 and 71.05.250.

RCW 18.83.110.[1]

█ The attorney-client privilege extends to documents that contain a privileged communication. *Pappas v. Holloway,* 114 Wn.2d 198, 787 P.2d 30 (1990). By analogy, the psychologist-patient privilege claimed by Michell applies to records of counseling to the extent that they document statements she made during the counseling session. Virginia Mason contends that the privilege did not apply to Michell's statements during the counseling sessions either because Michell manifestly did not intend her communications to be confidential; or because she waived the privilege by making the statements to Dr. Snyder in Tracy's presence; or because statements made during joint counseling are not privileged in litigation between the joint patients.[2]

## II

█ Whether a patient reasonably intended a communication to be confidential in light of the surrounding circumstances calls for an objective inquiry. *State v. Post,* 118 Wn.2d 596, 612-13, 826 P.2d 172, 837 P.2d 599 (1992).

In *Post,* a murder defendant tried to exclude statements he had made to a Dr. Trowbridge in the course of an evaluation pursuant to sentencing for an earlier crime. Dr. Trowbridge saw Post only once, and told him that the interview results would not be confidential. The court held under these circumstances Post could not reasonably have expected the communication to be confidential and therefore the privilege did not arise.

---

[1]Neither RCW 70.96A.140 nor RCW 71.05.250 applies to these circumstances; nor does the Uniform Health Care Information Act, RCW 70.02, enacted after Dr. Snyder released Tracy's records. *Phipps v. Sasser,* 74 Wn.2d 439, 445 P.2d 624 (1968) is also inapposite, since it deals with the physician-patient privilege, not the attorney-client privilege.

[2]Virginia Mason argues lack of proximate cause as an alternative basis for the summary judgment, an issue that we need not reach.

In a proceeding to terminate her parental rights, it was manifest that a mother did not intend confidentiality of her communications with two clinical psychologists where the specific purpose of their evaluation of her was to provide some third party with the results thereof. *In re Henderson*, 29 Wn. App. 748, 752-53, 630 P.2d 944 (1981).

Michell was aware that Dr. Snyder would be filing a report with the District Court. While this suggests Michell did not have the reasonable intent of confidentiality necessary to invoke the privilege, other circumstances present issues of material fact. The purpose of the joint sessions as explained to her by Dr. Snyder was therapeutic, not evaluative — to explore with each other "issues of alcohol and religion that seemed to be major issues . . . and seemed to be sources of conflict". Dr. Snyder's report to the District Court was in connection with domestic violence charges pending against Tracy. Like the trial court, we cannot say as a matter of law that Michell must have intended that her communications about her own alcohol problem were subject to disclosure in a report detailing Tracy's progress in anger management counseling.

■ Statements made to an attorney (and by analogy to a psychologist) in the presence of a third person waive the privilege normally attached to them. *See State v. Wilder*, 12 Wn. App. 296, 300, 529 P.2d 1109 (1974); *State v. Anderson*, 44 Wn. App. 644, 650-51, 723 P.2d 464 (1986), *review dismissed*, 109 Wn.2d 1015 (1987). Although such statements may ordinarily remain privileged when the third person is a joint client,[3] *see, e.g., In re Grand Jury Subpoenas, 89-3 & 89-4*, 902 F.2d 244, 248 (4th Cir. 1990), the statements are not privileged in litigation between the joint clients. *Cummings v. Sherman*, 16 Wn.2d 88, 97, 132 P.2d 998 (1943).

---

[3]In *Wilder*, the third person whose presence caused waiver of the privilege (Mrs. Wilder) was not a joint client with Mr. Martin; his attorney was not her attorney. In *Anderson*, where a murder defendant and his wife went to see a psychiatrist, it was the presence of two other persons besides the declarant's spouse — a social worker and the wife's son — that caused waiver of the privilege, not the presence of the wife alone.

Taking all inferences in Michell's favor, she and Tracy were joint patients of Dr. Snyder, communicating with him for their mutual benefit. Their status compares with that of a husband and wife seeing an attorney as joint clients for the purpose of making wills. Michell did not waive the privilege as to her disclosures to Dr. Snyder merely because of Tracy's presence. These statements, however, were never privileged as between Michell and Tracy.[4] Our decision to affirm the grant of summary judgment is compelled by the rule set forth in *Cummings*:

> When two or more clients employ the same attorney in the same matter, communications made by them in relation thereto are not privileged inter sese. By selecting the same attorney, each party waives his right to place those communications under the shield of professional confidence. . . . Thus, if two or more persons consult an attorney at law for their mutual benefit, and make statements in his presence, *he may disclose those statements in any controversy between them* or their personal representatives or successors in interest.

(Italics ours.) *Cummings*, at 96 (quoting 28 R.C.L. *Witnesses* § 156, at 566 (1921)). *See also Billias v. Panageotou*, 193 Wash. 523, 526, 76 P.2d 987 (1938) ("The rule is uniform that, in litigation between the same parties, communications that had been made to an attorney for the mutual benefit of such parties are not privileged.") By analogy, Dr. Snyder was free to disclose Michell's statements in the course of litigation between Tracy and Michell.[5]

Michell asserts that Virginia Mason should not have released the records without her consent in any event unless

---

[4]Michell argues that the marital communications privilege applies as between Michell and Tracy so as to sustain the confidentiality of her communications made during the joint sessions. We agree with the hospital that the presence of Dr. Snyder waived the Reddings' marital communications privilege established by RCW 5.60.060(1). *State v. Barnhart*, 73 Wn.2d 936, 940, 442 P.2d 959 (1968).

[5]The above analysis does not resolve whether Virginia Mason violated the psychologist-patient privilege by releasing, without her consent, the record of Michell's individual counseling session on September 5. In view of our holding that no privilege attached under the circumstances to the records of joint counseling containing Michell's explicit admission of her alcohol problem, any effect of the disclosure of her session on September 5 (in which she only touched on the subject of alcohol) was de minimis.

it was pursuant to legal process. The function of a subpoena is to compel attendance at court proceedings, not to protect privileged information. A subpoena would have verified to Virginia Mason the existence of a legal controversy between Tracy and Michell. As it happened, the records were handed over with no assurance other than Tracy's word that he intended to disclose them to the court in connection with a pending divorce rather than to publicize them in some impermissible way.

Because Dr. Snyder disclosed the records voluntarily, Tracy did not need to subpoena them. As the trial court recognized, the fundamental issue is whether Dr. Snyder's records were privileged in a lawsuit between Tracy and Michell. Since they are not, any subpoena would have been enforced if resisted.

### III

Virginia Mason argues on policy grounds that records of a joint therapy session should always be available to either patient with the consent of that patient, without legal process, without the consent of the other patient and without regard to whether disclosure is sought in the course of litigation or for some other purpose. As a practical matter, such records are sometimes requested in connection with later treatment by a different therapist, when it may be impossible to get the other patient's consent. Virginia Mason argues that since the two patients have waived the privilege as to each other, so that either patient is free to reveal what the other person said during the joint counseling session, there is no reason not to make the records themselves available at the request of either patient. This argument overlooks the greater weight often accorded to what a professional has written down as compared to what a layperson claims to remember hearing. In the present case, for example, Tracy obviously thought that Dr. Snyder's record would more effectively establish Michell's admission of her alcohol problem than would his own testimony.

While it might be good policy to facilitate the free movement of joint patient records from one therapist to another, it is also possible that approving the rule sought by Virginia Mason would facilitate the free movement of such records into the hands of the merely curious. On this record we decline to adopt such a rule.

A genuine issue of material· fact exists as to whether Michell could reasonably intend Dr. Snyder to keep her remarks, shared during the joint therapy sessions, in confidence. Assuming she did, her remarks were privileged against compulsory disclosure — except as necessary to a court engaged in resolving a controversy between Michell and Tracy. Since Michell's admission of a drinking problem would clearly have significance to a court deciding a custody dispute between Michell and her husband, the records were not privileged in the context in which they were released. The trial court did not err in granting summary judgment.

Affirmed.

SCHOLFIELD and AGID, JJ., concur.