[No. 64159-0-I.   Division One.   January 31, 2011.]

CITIBANK SOUTH DAKOTA, NA, *Respondent*, v. TIM P. RYAN, *Appellant.*

*Tim P. Ryan*, pro se.

*William G. Suttell, Patrick J. Layman, Karen L. Hammer, Isaac L. Hammer, Nicholas R. Filer*, and *Malisa L. Gurule* (of *Suttell & Hammer PS*), for respondent.

¶1 SPEARMAN, J. — Tim Ryan appeals a superior court order granting Citibank South Dakota's motion for summary judgment based on alleged credit card debt. Because Citibank failed to provide adequate proof of Ryan's assent to the terms of an unsigned credit card agreement, we reverse and remand for further proceedings.

## FACTS

¶2 According to Citibank, Ryan applied for and was issued a Citibank credit card on a specific account. Citibank records indicated that debt was incurred on the card in the amount of $9,477.71. Citibank filed a collection action on June 29, 2009. Ryan filed a pro se answer to the complaint, denying Citibank's allegations.

¶3 Citibank filed a motion for summary judgment on July 17, 2009. Citibank's motion was supported by an affidavit from Citibank employee Delores Wageman. Wageman's affidavit set forth the total sum Citibank claimed was owing and provided copies of 13 monthly account statements, along with a six-page unsigned credit card agreement. The account statements indicated that payments were made on the account of more than $100 each on March 3, 2008, March 27, 2008, and May 9, 2008. The statements make no indication of how the payments were supposedly made. Nor do they cover the period in which the card was first issued or the majority of the debt was accumulated.

¶4 Ryan filed a pleading entitled "Opposition to Summary Judgment" in which he advanced several arguments relating to the sufficiency of Citibank's proof and further attempted to state counterclaims. He also filed an "Affidavit of Fact" advancing similar arguments that Citibank had failed to prove he entered into any credit card agreement.

¶5 During oral argument on the motion for summary judgment, Ryan represented himself and attempted to treat the proceedings as a trial. After substantial questioning about the basis for Ryan's arguments, the trial court granted Citibank's motion and awarded Citibank attorney fees under the terms of the card agreement.

¶6 Ryan appeals.

## ANALYSIS

¶7 A motion for summary judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "[T]he moving party bears the burden of showing the absence of a material issue of fact." *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008) (citing *Redding v. Virginia Mason Med. Ctr.*, 75 Wn. App. 424, 426, 878 P.2d 483 (1994)). After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclose that a genuine issue of material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

¶8 This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Khung Thi Lam v. Global Med. Sys. Inc.*, 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).

¶9 Ryan first makes several arguments regarding the trial court's treatment of his case. Ryan contends that the superior court failed to make an informed decision based on the evidence provided by both sides and took an improper role in the proceedings. The record, however,

shows that the trial court considered all of the affidavits and materials provided by the parties, and that the court's questioning of Ryan was entirely pertinent to the relevant legal issues. Contrary to Ryan's contentions, the trial court did not ignore any evidence, but rather, appropriately ensured that Ryan had every opportunity to point out the existence of any relevant evidence in the record.[1]

¶10 Ryan also repeats his argument from the trial court that summary judgment should not have been granted because Citibank did not provide the court with sufficient proof that he had assented to the terms of the unsigned credit card agreement. Based on the recent case of *Discover Bank v. Bridges*, 154 Wn. App. 722, 226 P.3d 191 (2010), we agree.[2]

¶11 In its opening brief, in arguing that it proved Ryan's assent to the credit card agreement, Citibank relied on *Discover Bank v. Ray*, 139 Wn. App. 723, 162 P.3d 1131 (2007), for the proposition that proof of a cardholder's assent may be established by sufficient proof of use of the card even without a signed agreement. Whether there is mutual assent is normally a question of fact that is reviewed under a substantial evidence standard. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 n.10, 94 P.3d 945 (2004). This determination of fact may be decided as a matter of law where reasonable minds could not differ. *Bridges*, 154 Wn. App. at 727-28.

¶12 In *Bridges*, however, a panel from Division Two of this court distinguished *Ray* and reversed a grant of summary judgment to a bank under circumstances very similar to this case. 154 Wn. App. at 727-28. The *Bridges* court

---

[1] While Ryan also correctly notes that the trial court's order was technically erroneous because it did not specifically list his responsive materials, it is clear from the record of the proceedings that the court carefully considered all of those materials, and that all of them have been included before this court in the appeal record. Any error in failing to specifically list all of Ryan's materials under CR 56(h) is therefore harmless. *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 590-91, 973 P.2d 1011 (1999).

[2] We note that the trial court did not have the benefit of the opinion in *Bridges* because that case was decided after the court's summary judgment ruling.

noted that in *Ray*, along with monthly account statements, the bank had provided the trial court with several cancelled checks the defendant had personally written in payment of the obligations on the credit card. The *Bridges* court concluded that the cancelled check evidence was critical to the conclusion that the bank had provided sufficient proof of assent to the unsigned cardholder agreement. *Bridges*, 154 Wn. App. at 727-28. Because, as here, the bank in *Bridges* provided only self-generated account statements and an unsigned agreement, and had not provided any evidence of personalized acknowledgment of the account similar to the cancelled checks in *Ray*, the *Bridges* court reversed and remanded for further proceedings:

> To establish a claim, Discover Bank had to show that the Bridges mutually assented to a contract by accepting the cardmember agreement and personally acknowledged their account. Discover Bank's pleadings disclose neither a signed agreement between Discover Bank and the Bridges nor detailed, itemized proof of the Bridges' card usage. Nor do they show that the Bridges acknowledged the debt, for example, through evidence of cancelled checks or online payment documentation. The record contains only monthly statements summarizing the Bridges' alleged account balance and payments purportedly made thereon and affidavits from [bank] employees, who were familiar with the Bridges' purported account records.

*Bridges*, 154 Wn. App. at 727.

¶13 Because the parties did not address *Bridges* in their opening briefs, we directed supplemental briefing, which has now been completed. In its supplemental briefing, Citibank argues alternatively that *Bridges* can be distinguished or that the proof it provided met the *Bridges* standard. We find neither contention persuasive.

¶14 Citibank first contends that *Bridges* is limited to circumstances where the alleged cardholder specifically and affirmatively denies any use of the card in its materials responding to a motion for summary judgment. Citibank cites no language from *Bridges* supporting this interpreta-

tion of its holding but argues that such a limitation should be implied from the facts in *Bridges*. The problem with this argument, however, is that it is not supported by the facts as set forth in the *Bridges* opinion. While Citibank asserts, without citation, that the defendants in *Bridges* specifically denied use of the credit card in their responsive materials, the actual language of the opinion described the defendants' materials as consisting of the same type of arguments criticizing the bank's proof as Ryan presented in this case. *See Bridges*, 154 Wn. App. at 725 n.1.[3] Thus, contrary to Citibank's contention, we conclude that the rule of *Bridges* applies to the adequacy of the bank's initial proof of assent to the cardholder agreement and does not depend on the nature of the purported cardholder's response. *See Seven Gables*, 106 Wn.2d at 13 (nonmoving party's duty to respond with specific factual claims arises once moving party has produced adequate affidavits).

¶15 Citibank alternatively argues that the proof they provided met the *Bridges* standard. Again, we disagree. The proof Citibank provided here is no better than the insufficient proof provided in *Bridges*.

¶16 The materials the bank in *Bridges* provided consisted of "the Bridges' account statements from June 16, 2006, to June 22, 2008," along with "a copy of the cardmember agreement in effect when the Bridges defaulted on their debt." 154 Wn. App. at 724-25. Because the bank in *Bridges* did not produce any "similar evidence of the Bridges' personal acknowledgement of the account" to the cancelled checks in *Ray*, and instead provided only "a generic summary of the purported account balance and

---

[3] The *Bridges* court described the defendants' arguments as "[i]n their pleading opposing summary judgment, the Bridges claimed that (1) '[i]n the day of computer technology and . . . sophisticated means,' banks can make account records say whatever they want to say; (2) signed charge slips were the only factual evidence sufficient to establish their alleged use of the card and, therefore, consent to the cardmember agreement; (3) the computer programs used to 'hold' their alleged account records could have been among those 'major news networks' reported as 'hacked.' " 154 Wn. App. at 725 n.1 (second and third alterations in original).

payments made on it," the evidence was insufficient to establish the defendants' assent. 154 Wn. App. at 728.

¶17 Here, Citibank relies on the monthly account statements that it attached to its motion. It argues that these constituted both proof of Ryan's acknowledgment of the debt by making payments on the account and proof of his assent to the terms of the cardholder agreement by making purchases with the credit card.

¶18 As for the supposed proof that Ryan made payments on the account, however, it is clear from *Bridges* that the bare notation of supposed payments on the account statements Citibank provided is not sufficient. The monthly account statements in *Bridges* similarly listed payments purportedly made on the account but were still insufficient to prove the defendants' personal acknowledgment of the debt in the absence of cancelled checks or similar materials. 154 Wn. App. at 727.

¶19 We also reject Citibank's claim that it otherwise proved Ryan's assent to the cardholder agreement by establishing that he personally used the card. Citibank asserts that the account statements proved Ryan used the card because some of those statements listed a numerical amount under the heading "purchase." But Citibank fails to consider that the *Bridges* court held that sufficient proof of use of a credit card would require *"detailed, itemized"* documentation of the alleged cardholder's actual use. 154 Wn. App. at 727-28 (emphasis added). None of the notations on the statements offered by Citibank here actually explained what the supposed purchase was or who it was from. Nor is it clear whether these were individual "purchases" or were only total amounts for the period covered by the statement. Moreover, these supposed purchases did not add up to anything near the total Citibank claimed was owed on the card. And the account statements did not otherwise provide a basis to match the listed amounts with any particular charge slip or purchase. The materials Citibank provided thus did not constitute the detailed and itemized documentation required by *Bridges*.

¶20 In sum, we find no reasoned basis to distinguish *Bridges* and conclude that Citibank's proof of Ryan's supposed assent to the credit card agreement failed to meet the *Bridges* standard. Accordingly, we reverse and remand for further proceedings consistent with this opinion. We emphasize, however, that our holding is limited to the facts present in this record as currently developed. The *Bridges* court specifically described additional means besides cancelled payment checks that could establish the requisite proof, including a signed agreement, online payment records, detailed and itemized proof of the defendant's card usage, or other evidence of the defendant's personal acknowledgment of the account. 154 Wn. App. at 727-28. But without such evidence here, Citibank did not provide adequate proof to support summary judgment based on its theory that Ryan assented to a contract by accepting the unsigned cardmember agreement and personally acknowledging the account.

¶21 Citibank requests attorney fees and costs under the terms of the credit card agreement. Because Citibank is not the prevailing party on appeal and, moreover, the ultimate outcome of the litigation is yet to be determined, we award no fees or costs.

¶22 Reversed and remanded.

LEACH, A.C.J., and LAU, J., concur.