

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| JONATHAN D. CLAUSEN and LILAC CITY, LLC, a Washington Limited Liability Company, dba LILAC CITY PAINTING, | ) ) ) ) ) | No. 40591-5-III |
| Appellant, | ) ) | |
| | ) | PUBLISHED OPINION |
| v. | ) ) | |
| WBL SPO I, LLC, a Delaware Limited Liability Company, and WORLD BUSINESS LENDER, LLC, a NEW YORK Limited Liability Company, | ) ) ) ) ) | |
| Respondent. | ) ) | |

STAAB, A.C.J. — In this appeal, we interpret the term "borrower" as used in the Washington Consumer Loan Act (CLA), chapter 31.04 RCW. The CLA applies to various loans made to Washington residents but does not apply to loans made "primarily for business, commercial, or agricultural purposes unless the loan is secured by a lien on the borrower's primary dwelling." RCW 31.04.025(4)(e).

World Business Lender (WBL) made a business loan to Lilac City LLC, a company owned by Jonathan Clausen. Clausen personally guaranteed the loan, and the guaranty was secured by a deed of trust on the personal residence he owned with his

wife. After Lilac City defaulted, WBL initiated a nonjudicial foreclosure on the residence. In response, Clausen and Lilac City filed suit against WBL, asserting claims under the CLA, the Consumer Protection Act (CPA), chapter 19.86 RCW, and Washington's usury statutes. On summary judgment the superior court dismissed Clausen's claims, holding that the CLA did not apply because Clausen was not a "borrower" under the CLA.

We affirm. The plain language and legislative intent of the CLA support the trial court's conclusion that Clausen was not a borrower and therefore the CLA licensing requirements did not apply to WBL's loan. Accordingly, Clausen's usury and CPA claims, which are premised on his alleged CLA violations, likewise fail.

BACKGROUND

Because this case was resolved on summary judgment, we consider the evidence in a light most favorable to Clausen as the nonmoving party. Jonathan and Jodi Clausen own property located on Norman Road in Spokane, Washington, which they have used as their principal residence. In June 2022, Jonathan Clausen, acting on behalf of his company, Lilac City LLC, submitted a "Business Financing Application" to Big Think Capital, an independent loan broker. The application identified Lilac City as the applicant. The application stated that the loan proceeds would be used for "[t]emporary

2

working capital, equipment and inventory until SBA[1] funds. looking to build." Clerk's

Papers (CP) at 73. Mr. Clausen indicated on the application that he was the "Primary

Owner" of Lilac City and listed an address on Hogan Street in Spokane for the business.

He signed below a paragraph acknowledging that Lilac City authorized Big Think Capital

to acquire a commercial loan.

Big Think Capital referred Lilac City to WBL, which agreed to loan Lilac City

$400,000, plus interest. As part of the transaction, Lilac City executed a "Business

Promissory Note and Security Agreement" (the Note), with Clausen signing as the chief

executive officer (CEO). The note expressly refers to Lilac City as the borrower and

states that the loan proceeds would be used exclusively for business purposes. In

connection with the loan, Mr. Clausen also signed a "Business Loan Purpose Affidavit"

affirming that the funds would not be used for personal, consumer, or household

purposes. The parties also executed an agreement authorizing direct deposit of funds into

an account held in the name of Lilac City.

To secure the loan obligations of Lilac City, Clausen signed a "Continuing

Guaranty Personal (Unlimited)" the (Guaranty) in his individual capacity, and not in his

capacity as CEO of Lilac City. To secure the payment obligations under the Guaranty,

Clausen and his wife signed a "Deed of Trust, Assignment of Leases and Rents and

---

[1] Small Business Administration.

3

Security Agreement" the "Deed of Trust" dated August 9, 2022, granting WBL a security interest in their Norman Road residence. The recitals to the Deed of Trust reiterate the loan structure: Lilac City was the "'borrower,'" and the Clausens, as "Trustor[s]," were signing the Deed of Trust to guarantee the loan to Lilac City.

WBL then partially funded the loan in August 2022, by paying off Lilac City's preexisting business debts. WBL and Lilac City also executed two "Holdback" agreements. WBL ultimately applied the Holdback funds to loan payments after Lilac City defaulted. Following Lilac City's default, WBL initiated nonjudicial foreclosure proceedings on the Clausens' Norman Road residence.

In February 2024, Mr. Clausen and Lilac City filed a complaint in Spokane County Superior Court against WBL asserting violations of the CLA, Washington's usury statute,[2] and the CPA. They concurrently moved for a temporary restraining order and preliminary injunction to stop the trustee's sale of their Norman Road residence. The court granted a preliminary injunction, restraining the sale pending the outcome of the case.

WBL subsequently moved to dismiss the case under CR 12(b) and CR 56. The court issued a written decision granting WBL's motion, dismissing the complaint.

Clausen and Lilac City appeal.

---

[2] RCW 19.52.020.

No. 40591-5-III
*Clausen, et al. v. WBL Spo I, LLC, et al.*

ANALYSIS

1. CONSUMER LOAN ACT

Clausen argues that the trial court erred by concluding he and his spouse were not "borrowers" under former RCW 31.04.025(2)(e) (2023),[3] and that the CLA licensing requirements did not apply to WBL. He contends that the CLA's broad definition of "borrower" includes any individual who seeks information about a loan and pledges liens against their primary dwellings, even when the loan is made to a separate business entity for business purposes. He further asserts that WBL's conduct triggered the CLA's protections, and that the trial court's interpretation undermines the legislature's stated goal of protecting Washington homeowners. We disagree and affirm the trial court's dismissal of Clausen's claims on summary judgment.

Our review of the trial court's order on summary judgment is de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998).

---

[3] While this case was pending, the legislature amended RCW 31.04.025, effective June 6, 2024. LAWS OF 2024, ch. 249, § 2. The amendments apply prospectively. LAWS OF 2024, ch. 249, § 5. Although the substance of the relevant provision did not change, its subsection designation did. *Compare* RCW 31.04.025(4)(e), *with* former RCW 31.04.025(2)(e). This opinion refers to the former version of the statute, which was in effect at the time of the underlying transaction and proceedings.

5

No. 40591-5-III
*Clausen, et al. v. WBL Spo I, LLC, et al.*

Summary judgment is proper if "there is no genuine issue" of "material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record. *Redding v. Virginia Mason Med. Ctr.*, 75 Wn. App. 424, 426, 878 P.2d 483 (1994).

We also review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, we look at the plain language of the statute, consider the text of the provision, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id.* "'Whenever possible, statutes are to be construed so no clause, sentence or word shall be superfluous, void, or insignificant.'" *Porter v. Kirkendoll*, 194 Wn.2d 194, 211, 449 P.3d 627 (2019) (internal quotation marks omitted) (quoting *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009)). We must apply the statute as written, "we cannot rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). If the plain meaning of the statute is unambiguous, we apply that meaning. *Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 364, 474 P.3d 547 (2020).

6

If the plain language of the statute is susceptible "'to more than one reasonable interpretation,'" then the statute is ambiguous. *Jametsky*, 179 Wn.2d at 762 (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009)). We resolve ambiguity by considering outside sources that may indicate legislative intent, including principles of "'statutory construction, legislative history, and relevant case law.'" *Jametsky*, 179 Wn.2d at 761 (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). "However, multiple meanings of a word do not necessarily create ambiguity. All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008).

Chapter 31.04 RCW contains the CLA, which regulates certain loan transactions for high-risk consumers in Washington. *See* RCW 31.04.025(1), .015(13). It provides a mechanism for licensed businesses to provide certain loans with interest rates up to 25 percent. RCW 31.04.105(1).

Not all lenders who provide high-interest loans are subject to the CLA. Relevant here, former RCW 31.04.025(2)(e) exempts:

> Any person making a loan primarily for business, commercial, or agricultural purposes *unless the loan is secured by a lien on the borrower's primary dwelling*.

(Emphasis added.)

Two key definitions within the CLA frame the analysis in this case:

7

- "Borrower" means *any person who consults with or retains a licensee or person subject to this chapter in an effort to obtain, or who seeks information about obtaining a loan, regardless of whether that person actually obtains such a loan.* RCW 31.04.015(4) (emphasis added).

- "Person" includes *individuals*, partnerships, associations, *limited liability companies*, limited liability partnerships, trusts, corporations, and all other legal entities. RCW 31.04.015(21) (emphasis added).

The trial court correctly determined that WBL was not subject to licensing requirements under the CLA, because Lilac City—not Clausen or his wife—was the borrower, and the loan was not secured by the borrower's primary dwelling.

It is undisputed that Lilac City was the named borrower on the loan and deed of trust and that the loan was made for business purposes. An LLC such as Lilac City qualifies as a "person" under RCW 31.04.015(21), which includes both individuals and business entities. Under former RCW 31.04.025(2)(e), loans made primarily for business purposes are exempt from CLA licensing requirements unless they are secured by a lien on the *borrower's* primary dwelling.

Two key factors support the conclusion that WBL is exempt from the CLA's licensing requirements. First, while the loan was secured by a lien on the Clausens' personal residence, there is no evidence that the residence was owned or occupied by Lilac City. Thus, the borrower—Lilac City—did not pledge its own primary dwelling as collateral.

Second, the Deed of Trust to the Clausens' primary residence did not "secure" the loan itself, but rather secured Clausen's personal Guaranty. The Deed of Trust specifically identified Lilac City as the borrower and the Clausens as guarantors. Because Clausen, not Lilac City, provided the personal Guaranty, the Deed of Trust served as collateral for that Guaranty, not for the loan made to Lilac City. This distinction further supports the conclusion that the exemption in former RCW 31.04.025(2)(e) applies to WBL.

Clausen argues that he and his wife should be treated as "borrowers" under RCW 31.04.015(4), which defines "borrower" as "any person who consults with or retains a licensee or person subject to this chapter in an effort to obtain, or who seeks information about obtaining a loan." He contends that because he consulted with WBL and guaranteed the loan, he and his wife individually meet this definition. *See* Appellant's Br. at 14. But this interpretation stretches the statutory language beyond its plain meaning. Clausen's interpretation seems to read undue ambiguity into the terms "any person" and "individual."

While the definition of "person" under RCW 31.04.015(21) includes both individuals and limited liability companies, it does not suggest that agents or guarantors acting on behalf of an entity automatically become "borrowers" in their own right. Moreover, the clause "regardless of whether that person actually obtains such a loan" in RCW 31.04.015(4) must be read in context: it extends borrower status to individuals who

9

apply for or seek information about a loan even if they are not ultimately approved.

Accepting Clausen's definition would turn every agent acting on behalf of a separate

business entity into a borrower.[4]

Clausen also contends that reading the definition of "borrower" to exclude persons

who pursue business loans on behalf of a legal entity renders the statutory language

superfluous because a business entity cannot have a "primary dwelling." While this may

be true, the statutory language has meaning and relevance in situations where a borrower

is doing business without creating a separate entity.

---

[4] Because the statute is unambiguous, it is unnecessary to resort to statutory construction, legislative history, or case law to interpret the term "borrower." *See Jametsky*, 179 Wn.2d at 761-62. Nonetheless, this interpretation is consistent with well-established agency principles:

> "An agent who enters into a contract on behalf of a disclosed principal does not become a party to the contract and is not subject to liability as a guarantor of the principal's performance unless the agent and the third party so agree. Thus, in the absence of such agreement, an agent for a disclosed principal who enters into a contract on the principal's behalf is not subject to liability if the principal fails to perform obligations created by the contract."

*United Fin. Cas. Co. v. Coleman*, 173 Wn. App. 463, 475 n.5, 295 P.3d 763 (2012) (quoting RESTATEMENT (THIRD) OF AGENCY § 6.01, cmt. b (A. L. I. 2006)).

Further, as the trial court correctly reasoned, under Washington law a debtor-entity and guarantor cannot be one and the same. *Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 707, 952 P.2d 590 (1998) ("'The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation.'") (quoting *Robey v. Walton Lumber Co.*, 17 Wn.2d 242, 255, 135 P.2d 95 (1943)); CP at 628.

Next, Clausen's reliance on an email from DFI[5] is also unavailing. Both in the

trial court and on appeal, Clausen cited two exhibits containing emails exchanged

between his counsel and JJ Choi, Chief of Regulatory Affairs for DFI's Division of

Consumer Services. In response to questions by Clausen's attorney, Choi suggested that

the CLA would apply under similar circumstances. However, the email was not made

under oath and contained disclaimers that it was not intended as legal advice or a formal

opinion from DFI. WBL moved to strike the emails, arguing that they constituted

inadmissible hearsay and legal conclusions, and did not constitute a formal agency

interpretation. The trial court ultimately denied WBL's motion to strike, explaining that

it would not give the emails "a lot of weight." *See* Rep. of Proc. (RP) at 42.

We give no deference to the informal email. It is not legal advice or DFI's

position. DFI did not submit a brief or a declaration in this case and there is no indication

that DFI had all the information before it.

Clausen also invokes public policy considerations, arguing that the CLA should

apply in this case because excluding individuals like himself from the definition of

"borrower" frustrates the CLA's goals of protecting consumers and their primary

dwellings. In support, he cites the legislative findings and declarations in RCW

31.04.015, which emphasizes the importance of responsible lending, access to credit, and

---

[5] The Department of Financial Institutions and its director are charged with administering and enforcing the CLA. *See* RCW 31.04.015(5), .093, .205.

protections for borrowers in the residential real estate market. But while these policy objectives are important, they cannot override unambiguous statutory language. As this court has made clear, "compelling as [public policy arguments] may be, we are not free to create public policy under the guise of interpreting a statute. That is a legislative matter." *Graham v. Notti*, 147 Wn. App. 629, 640, 196 P.3d 1070 (2008).

Finally, Clausen argues in his reply brief that accepting WBL's interpretation would improperly treat the term "borrower" as singular, contrary to RCW 1.12.050, which provides that statutory terms may be construed as plural unless the context clearly indicates otherwise. But that principle does not support his position. The issue in this case is not whether the statutory term "borrower" includes more than one borrower. Rather, the issue is whether Clausen acted in his individual capacity when seeking the loan. He did not. The undisputed evidence shows that Clausen sought the loan on behalf of Lilac City, the named borrower.

The trial court properly concluded that Clausen and his wife were not "borrowers" under the CLA. Accordingly, the licensing exemption in former RCW 31.04.025(2)(e) applies to WBL and the trial court properly dismissed Clausen's CLA claim.

2. USURY AND CONSUMER PROTECTION ACT CLAIMS

Clausen contends the trial court erred by dismissing his claims under the CPA and Washington's usury statutes. He argues that WBL charged an annual interest rate of 28.61 percent, in violation of RCW 31.04.105(1), which caps interest at 25 percent for

CLA licensees, and RCW 19.52.020, which caps general interest rates at 12 percent.

Clausen asserts that because WBL was not licensed under the CLA, it was not entitled to

charge a rate above the general usury cap. He further claims that WBL's alleged CLA

violations—including charging excessive interest and taking a lien against his primary

dwelling without being licensed—also constitute unfair and deceptive practices under the

CPA.

WBL responds that Clausen's claims fail because the loan was a business-purpose

transaction made to Lilac City, and is therefore exempt from the usury statute under

RCW 19.52.080. In support of its argument, WBL cites *Paulman v. Filtercorp*, 127

Wn.2d 387, 899 P.2d 1259 (1995), where the Washington Supreme Court held that

personal guarantees do not transform business loans into consumer loans subject to usury

protections. WBL also argues that Clausen's CPA claim cannot survive because it is

entirely derivative of his CLA and usury claims.

Washington's usury statute prohibits charging an interest rate that exceeds 12

percent per annum. RCW 19.52.020. However, RCW 19.52.080 prevents certain

business entities or persons involved in business loan transactions from pleading the

defense of usury:

> Profit and nonprofit corporations, Massachusetts trusts, associations, trusts, general partnerships, joint ventures, limited partnerships, and governments and governmental subdivisions, agencies, or instrumentalities may not plead the defense of usury nor maintain any action thereon or therefor, and persons may not plead the defense of usury nor maintain any

> action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: PROVIDED, HOWEVER, That this section shall not apply to a consumer transaction of any amount.
>
> Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

RCW 19.52.080.

In *Paulman*, when interpreting the provision above, the Washington Supreme Court held that a business loan to a corporation does not lose its character as such merely because it is guaranteed by an individual person. 127 Wn.2d at 393 ("When a corporate debtor borrows funds for a business purpose, RCW 19.52.080 applies regardless of whether the loan is guaranteed by a natural person.").

"The CPA prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Trujillo v. Nw. Tr. Servs, Inc.*, 183 Wn.2d 820, 834, 355 P.3d 1100 (2015) (quoting RCW 19.86.020). To succeed on a CPA cause of action, the plaintiff must establish the following elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *see also* RCW 19.86.090. The first two elements of a CPA claim "may be established by a showing that the alleged act constitutes a per se unfair trade practice." *Hangman*, 105 Wn.2d at 786. "A per se unfair trade practice exists when a statute which has been

14

declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id*. By statute, a violation of the CLA is also a violation of the first and second elements of the CPA. RCW 31.04.208.

The trial court properly dismissed Clausen's claims under both the usury statute and the CPA. Clausen's claims are premised on the assertion that WBL violated the CLA by making an unlicensed loan at an excessive interest rate secured by a lien on his primary dwelling. However, as discussed above, the CLA does not apply to the loan at issue because the borrower—Lilac City—is a business entity and did not pledge its own primary dwelling as security. The statutory exemption in former RCW 31.04.025(2)(e) applies, and therefore WBL was not required to be licensed under the CLA.

Clausen's usury claim fails for similar reasons. Although the general usury statute limits interest rates to 12 percent per annum, RCW 19.52.080 precludes both business entities and "persons" from asserting a usury defense in business loan transactions. This includes loans made to businesses for business purposes that are secured by personal guarantees. *Paulman*, 127 Wn.2d at 392-94. *Paulman* applies here. Lilac City, a business entity, was the borrower, and the loan was for business purposes. The personal guarantee provided by Clausen does not convert the transaction into a consumer loan as a matter of law.

15

Clausen argues that *Paulman* is distinguishable because it predated the 2011 amendments to the CLA. However, the CLA amendments do not alter the usury analysis under RCW 19.52.080. The CLA's licensing and penalty provisions are separate from the usury statute, and Clausen cites no authority to support his argument that a violation of the CLA resurrects a usury defense barred by RCW 19.52.080. Moreover, as discussed, no CLA violation occurred.

Because Clausen's CPA claim is entirely derivative of his CLA and usury arguments, it fails as well. RCW 31.04.208 provides that a violation of the CLA constitutes a per se violation of the first two elements of the CPA, but without a valid underlying CLA violation, Clausen cannot satisfy the threshold elements of a CPA claim. Thus, the trial court correctly concluded that Clausen's complaint ties the alleged unfair or deceptive conduct directly to WBL's purported violations of the CLA and usury statutes.

We conclude that the trial court properly dismissed Clausen's CPA and usury statute claims.

3. ATTORNEY FEES

Both parties request attorney fees on appeal. We address each request, in turn.

Clausen requests attorney fees under RAP 18.1, the CLA, and the CPA.[6] However, because we affirm the trial court's dismissal of Clausen's CLA and CPA claims, he is not entitled to an award of fees under either statute.

WBL requests its reasonable attorney fees and costs for this appeal under RAP 18.1 and RCW 4.84.330. Under RCW 4.84.330, where a contract specifically provides for attorney fees and costs, the "prevailing party" shall be entitled to such fees and costs. The "prevailing party" is "the party in whose favor final judgment is rendered." RCW 4.84.330.

The Note, Guaranty, and Deed of Trust each contain attorney fee provisions. The Note requires Lilac City to pay WBL's reasonable attorney fees and costs incurred in enforcing the agreement. The Guaranty obligates Lilac City to pay all costs and attorney fees incurred in collecting any part of the guaranteed obligations. And under the Deed of Trust, WBL is entitled to recover all costs and expenses, including attorney fees, incurred in pursuing its remedies. Because WBL is the prevailing party on appeal, it is entitled to an award of its reasonable attorney fees and costs incurred in responding to this appeal.

---

[6] In reply, Clausen seems to also request prevailing party attorney fees under the loan documents. This request fails for three reasons. First, Clausen did not request attorney fees on this basis in his opening brief. He was required to make this request in his opening brief, which he did not do. *See* RAP 18.1(b). Second, arguments raised in a reply brief are too late to warrant consideration. *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). Third, because Clausen is not the prevailing party on appeal, he is not entitled to attorney fees under the provisions in the loan documents.

No. 40591-5-III
*Clausen, et al. v. WBL Spo I, LLC, et al.*

Clausen is not entitled to an award of attorney fees.

Affirmed.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, J.