[No. 10143. Department Two. July 29, 1912.]

R. F. BICKNELL et al., Respondents, v. JAMES HENRY, Appellant.[1]

CHATTEL MORTGAGES—TRANSFER OF PROPERTY—ASSUMPTION OF DEBT—EVIDENCE—SUFFICIENCY. The purchaser of sheep upon which there was a chattel mortgage, is shown to have promised to pay the mortgage debt, by clear, satisfactory and convincing evidence, where it appears that he had notice of the chattel mortgage and refused to pay the price without authority from the mortgagees, who, upon request of the mortgagor, telegraphed direct to the purchaser that he had their consent to receive the sheep upon paying the balance due, that, upon ascertaining the amount and finding that it exceeded the price and claims of the herder, the mortgagor notified

[1]Reported in 125 Pac. 156.

the mortgagees of such fact, whereupon the mortgagees telegraphed direct to the purchaser that they would pay his draft for the shortage, whereupon he drew a sight draft therefor and took possession of the sheep; since he acted upon the authority given, and acceptance of the proposition obligated him to pay the mortgage debt.

FRAUDS, STATUTE OF—ORIGINAL PROMISE. A promise by the purchaser of sheep to pay the balance due on a chattel mortgage, in consideration of the consent of the mortgagees to the transfer, is an original promise upon an independent consideration, and not to answer for the debt of another within the statute of frauds.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered September 8, 1911, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on a note and to foreclose a chattel mortgage. Affirmed.

*John E. Ryan* and *Grover E. Desmond*, for appellant.
*Englehart & Rigg*, for respondents.

Mount, J.—Plaintiffs brought this action to recover a sum of money alleged to be due upon a promissory note executed by defendant Homer V. Brenner, and which was alleged to have been assumed by the defendant James Henry, and to foreclose a chattel mortgage upon a band of sheep, which mortgage was given to secure the note. The other defendants were alleged to have or claim some interest in the sheep, but that such claim was subject to plaintiffs' claim. The principal issue in the case was upon the assumption of the debt. The trial court found in favor of the plaintiffs, and entered a judgment accordingly. The defendant James Henry only has appealed.

The facts are as follows: On May 21, 1910, the plaintiffs sold and delivered to Homer V. Brenner, at Heppner, Oregon, a band of 2,600 sheep for $8,250. Fifty dollars of the purchase price was paid in cash, and a note due in seven months secured by a chattel mortgage upon the sheep was given by Brenner to plaintiffs for the balance. The mortgage recited that the sheep were "to be trailed to and run

in Yakima county," in this state. Thereafter the sheep were driven into Yakima county, and about the same time, namely, on the 25th day of May, 1910, the mortgage was filed for record in Yakima county. The mortgage did not contain an affidavit that it was made in good faith. The note for $8,200 was placed for collection in the Citizens National Bank, at Baker, Oregon, by the plaintiffs, who reside in Chicago.

On December 10, 1910, Mr. Brenner agreed to sell 2,300 of the sheep to the defendant Henry for $4.50 per hundred-weight. Five hundred dollars was paid to Brenner upon this contract of purchase, by C. C. Churchill, who was agent for Mr. Henry. This contract was in writing, and provided: "Said sheep to be fat and in merchantable condition. Sheep to be delivered and weighed at Toppenish by February 1. Sheep not to be fed or watered after leaving yard at Outlook before being weighed. No sheep to be accepted by Churchill unless fat." Thereafter, on December 22, 1910, 460 head of sheep were delivered to Mr. Churchill for Mr. Henry, and the price thereof, $2,066.40, was paid to Brenner. One thousand three hundred and five dollars of this was thereupon applied upon the note. At this time it does not appear that Mr. Henry or his agent, Churchill, had actual notice of the mortgage. Thereafter, on February 6 and 9, 1911, the balance of the sheep were taken to the stock yards of the railway company to be delivered to defendant Henry. His agent, Mr. Churchill, was then informed of the mortgage, and refused to receive or pay the purchase price of the sheep without authority from the plaintiffs. Mr. Brenner then sent a telegram to Mr. Bicknell at Chicago as follows: "Wire C. C. Churchill authority to receive sheep. Rush answer." In response to this telegram, the plaintiff Mr. Bicknell answered on the same day, February 9, direct to Mr. Churchill, as follows: "By paying balance due Citizens National Bank, Baker, Oregon, you have our consent to receive Brenner sheep." Mr. Churchill thereupon, on the same

day, sent a telegram to the bank, as follows: "What is balance due you from Homer Brenner? Wire quick." The bank replied to Churchill on the same day: "Brenner balance on note $7,372." Mr. Churchill thereupon calculated that, with the money already paid to Brenner and with the amount of the note, the sheep would cost him "$88 and something" more than he had agreed to pay for them. The herder, one Mr. Verling, also had a claim of $411 against the sheep, and refused to release them until his claim was paid. Thereupon, on February 10, 1911, Mr. Brenner sent a telegram to the plaintiff Bicknell as follows: "Sheep lacks $499 enough to pay herder and mortgage. Herder is holding sheep here. Wire satisfaction." Thereupon Mr. Bicknell answered to Mr. Churchill: "Will pay your draft on Bicknell & Gemmell, care Clay-Robinson Company, Chicago, for amount Brenner shortage up to $500." Mr. Churchill then drew a sight draft upon the plaintiffs in favor of Mr. Verling for $411, and this draft was subsequently paid by the plaintiffs. Mr. Verling released the sheep, and they were taken over by Mr. Churchill for Mr. Henry, on February 10 or the morning of the 11th, 1911.

After the sheep had been delivered to Mr. Churchill, defendant Yost brought an action against Mr. Brenner and sued out a writ of attachment. The sheriff seized 460 of the sheep in possession of defendant Henry, or his agent, Mr. Churchill, and afterwards the sheriff sold the same and they were purchased by Mr. Yost. Upon the question of Mr. Yost's interest in the sheep, the trial court concluded that defendant Yost acquired no right, title, or interest in the sheep, and that the sale by the sheriff to Mr. Yost conveyed no right, and that Yost is holding the sheep in his possession. Neither Mr. Yost nor the sheriff has appealed, and the judgment is conclusive as to them. After the sheep were delivered to defendant Henry or his agent, he refused to pay the note, whereupon this action was brought. In his answer Henry denies that he assumed and agreed to pay the

note, but alleges that he purchased the sheep and owes thereon $5,372.83, after deducting for certain expenses on account of this litigation, and that he is willing to pay this sum to whom the court shall direct.

Appellant argues in his brief, that the chattel mortgage is void; that he is a subsequent purchaser in good faith; that his agent, Churchill, was a special agent and had no authority to assume obligations without express instructions, and that in fact there was no assumption of the debt by the defendant Henry or his agent. This last question is the one which controls the case. The others are mere incidental or collateral questions. As between the mortgagor and the mortgagee, the mortgage was no doubt a valid one. The agent of Mr. Henry knew of the mortgage before the sheep were delivered to him or paid for. He was therefore a purchaser with notice. He had authority to purchase the sheep and to obligate his principal for the purchase price. There is no dispute upon that point. After he learned of the mortgage upon the sheep, he requested the mortgagor to obtain authority from the plaintiffs, who were mortgagees, to release the sheep or to permit a delivery to the purchaser. Mr. Brenner then sent a message to Mr. Bicknell, saying: "Wire C. C. Churchill authority to receive sheep. Rush answer." The answer came: "By paying balance due to Citizens National Bank, Baker, Oregon, you have our consent to receive Brenner sheep." Mr. Churchill then was informed of the amount and thereupon took the sheep.

It is plain that Mr. Churchill knew of the claim of the plaintiffs upon the sheep, knew the amount of the claim, and that the telegram was a refusal to permit delivery of the sheep unless the claim was paid or assumed. He thereupon took the sheep. It is true he made no verbal or written promise to assume or pay the note, but he quietly took the sheep. He acted upon the authority of the telegram, and is bound thereby as much so as if he had answered back in writing: "I will take the sheep and pay the note." Be-

fore he took the sheep it appears that the herder made a claim of $411 for herding charges. This herder refused to permit the delivery of the sheep until his claim was paid. Thereupon Mr. Churchill calculated what the purchase price of the sheep would amount to, and found that, with the payments already made to Mr. Brenner, the mortgagor, and with the amount due upon the mortgage, he would be required to pay "$88 and something" more than he had agreed to pay for the sheep, and besides this, the herder claimed $411. Mr. Brenner then wired the mortgagee: "Sheep lack $499 enough to pay herder and mortgage. Herder is holding sheep here. Wire satisfaction." Thereupon the mortgagors answered direct to Mr. Churchill, authorizing him to draw a draft for the shortage up to $500. Churchill thereupon drew a draft for $411, and the herder was therewith paid. This money was paid by the plaintiffs in order that delivery of the sheep might be made, and that the purchaser might pay or assume the amount of the note and mortgage against the sheep, viz., $7,372.

While the rule is that the promise to pay or assume a debt "must be clear, satisfactory and convincing" (*Ordway v. Downey*, 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892), the facts stated above plainly bring the promise within that rule. The fact that Churchill took the sheep after the mortgagee had told him he could do so by paying the balance due upon the note and mortgage was sufficient. He could not act upon that offer and remain quiet, and then be heard to say that he did not promise to pay. As we said in *Gay v. Schaefer*, 52 Wash. 269, 100 Pac. 334:

"It is not claimed that the promise was in writing and it is not necessary that it should be. This is not a mere promise to answer for the debt of another. The promise was made upon consideration that the respondent would consent to a transfer of the mortgaged property from Frost to the promisor. Consent was given by the respondent, and the transfer was thereupon made. The debt thereby became

the debt of the promisor, and is not within the statute of frauds."

The same is true in this case. Mr: Churchill did not strictly assume the debt of another. He bought the sheep and created a debt of his own and of his principal, which has not yet been paid. That debt was the promise to pay the note and mortgage held by the bank. He was dealing for his principal, Mr. Henry, directly with the plaintiffs, and it was clearly understood that he should pay for the sheep by paying the note at the bank at Baker, Oregon. He did not do so, but still retains the sheep and the purchase price.

The judgment was right, and it is therefore affirmed.

PARKER, ELLIS, and MORRIS, JJ., concur.