[No. 12564.  Department Two.  August 20, 1915.]

## A. J. Campbell *et al.*, *Appellants*, v. Weston Basket & Barrel Company, *Respondent.*[1]

Frauds, Statute of — Agreement to Pay Debt of Another. Where, upon a meeting of creditors, it was agreed that one of them was to take over the plant and pay $4,000 toward the lienable claims of the insolvent, his promise to another creditor having a nonlienable claim "to see the claim paid," is a promise to answer for the debt of another, and void, within the statute of frauds, unless in writing, or unless from other circumstances it appears to be an original and not a collateral undertaking.

Same—Agreement to Pay Debt of Another—Memorandum—Sufficiency. Such an agreement is not taken out of the operation of the statute of frauds by letters referring to the closing up of the matter or to the "understanding" of a third person as to the promise, none of which determines what the agreement was without resort to parol evidence; since the memorandum must be complete without resort to such evidence.

Same—Promise to Pay Debt of Another—Original or Collateral Agreement. Where, upon a meeting of creditors, it was agreed that one of them was to take over the plant and pay $4,000 toward the lienable claims of the insolvent, his promise to another creditor, having a nonlienable claim, "to see the claim paid," cannot be sustained as an original undertaking, in consideration of such claimant's forbearance to sue, there being no agreement to "pay the debt," and no release of a valid lien on the property.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered June 25, 1914, upon granting a nonsuit, dismissing an action on contract. Affirmed.

*Thorwald Siegfried*, for appellants.

*Ryan & Desmond*, for respondent.

Morris, C. J.—In January, 1911, the Western Veneer & Box Company, of Edmonds, Washington, hereafter referred to as the Box Company, was indebted to the Weston Basket & Barrel Company, of San Francisco, hereafter called the Basket Company, in the amount of approximately

[1]Reported in 151 Pac. 103.

$6,000. The Box Company was also indebted to appellants in the sum of $1,839.72 for logs which it had bought from them, was in arrears to its employees, and was otherwise unable to meet its bills. The laborers were insisting on their money, and all concerned were seeking some way of getting money out of the plant to meet its obligations. With matters in this condition, Mr. Mackall, manager for the Basket Company, Mr. Kwapil for the Box Company, appellants and others interested, met on January 28th and reached an agreement whereby the Basket Company was to take over the plant of the Box Company with the material and finished product on hand and to pay $4,000 toward the lienable claims of the company. Appellants, alleging that, as a part of this agreement, respondent promised to pay their claim of $1,839.72, brought this action to recover that sum, and prosecute this appeal from a judgment of dismissal.

The sole question is whether this promise of respondents was an original undertaking to pay the appellants' claim or only a collateral promise, and, if so, whether it is evidenced by a sufficient memorandum to take it out of the statute of frauds. Appellants' contention is that, in consideration of their agreement not to legally enforce their claim, Mr. Mackall, acting for respondent, promised "On the honor of a man I will see you paid." Referring to this promise, A. J. Campbell, one of the appellants, testified in part as follows:

"Q. (By the court): What did he (Mackall) say? He would see you paid, or just pay your claim? A. He said he would see the claim paid. Q. (By the court): Which was it? A. He said he would see it paid."

This promise is clearly an agreement to answer for the debt of another; and unless it be evidenced by a memorandum in writing, or it appears from other circumstances that the agreement was an original undertaking and not collateral as would appear from the language quoted, the promise is within the statute and unenforceable. Realizing this, appel-

lants contend that several letters introduced by them constitute a sufficient memorandum to take the promise out of the statute. The first of these was from Mackall to Campbell, dated January 28th, in which he said: "We will close up the Kwapil matter as agreed today. Kwapil saw me and agreed to go on as agreed." And a letter to Mr. Ryan, attorney for the respondent, as follows: "Mr. Kwapil will close up the deal as we talked over today. I am going home tonight and the matter is in your hands to close. I am to pay $4,000 and take care of the note for $500." All the evidence shows that this $4,000 was to be applied in payment of the lienable claims. It is not contended that appellants' claim was lienable, and hence, this letter adds no strength to the language of the promise as testified to by Mr. Campbell. Appellants further rely upon a letter from Mr. Ryan to Mr. Campbell in which it is stated that Ryan was in receipt of a letter from Mackall, who advised him that "his (Mackall's) understanding of the agreement with you (Campbell) is that he should pay you this money as he got it out of the stock, and suggests that at the present time he make a payment to you of six or seven hundred dollars, and the balance after more stock was shipped out." This, however, is not a promise by Mackall, nor can it be construed as anything more than Ryan's understanding of Mackall's undertaking. If appellant had produced the letter from Mackall to Ryan the situation might be different. If, however, the letter could be read as against respondent it is not sufficient alone, but would have to be read in connection with parol evidence to determine what the agreement was. This cannot be done. None of these letters establish anything without reference to parol evidence. In *Cushing v. Monarch Timber Co.*, 75 Wash. 678, 135 Pac. 660, Ann. Cas. 1914 C. 1239, we held that a promise partly written and partly oral is within the statute, saying:

"By an unbroken line of decisions we have held that, to meet this statute, the writing evidencing the agreement must

be so complete as to make a resort to parol evidence to establish any material element of the agreement unnecessary."

And in *Crouch v. Forbes*, 63 Wash. 564, 116 Pac. 14, it is said:

"We have a contract partly written and partly oral, which is a parol contract. The statute requiring the contract to be in writing . . . and no such promise being found in the writing, we must look to the oral agreement to supply it, and that we may not do."

The application of this $4,000 was a material element of the agreement, and no promise to pay any part thereof to appellants is shown by any of these letters. The evidence establishes no more than that respondents agreed to operate the mill and pay off the lienable claims to the extent of $4,000. Appellants claim not being lienable, was not assumed in that agreement.

Appellants next contend that, following the rule of *Bicknell v. Henry*, 69 Wash. 408, 125 Pac. 156, and other like cases, their forbearance to sue was a sufficient consideration to support an original promise, and that the taking over of the Box Company's plant by the respondent was in effect an original undertaking by them to pay appellants' claim. An examination of these cases clearly shows no rule in appellants' favor.

In the *Bicknell* case, one Brenner had mortgaged a band of sheep to the plaintiff. The defendant purchased the sheep and was about to remove them, when he discovered the mortgage and a herder's lien upon them. After some telegraphic correspondence concerning his claim, the plaintiff consented to the defendant receiving the sheep upon his assumption of the mortgage and the herder's lien. We said:

"The telegram was a refusal to permit the delivery of the sheep unless the claim was paid or assumed. He thereupon took the sheep. It is true he made no verbal or written promise to assume or pay the note. . . . He acted upon the authority of the telegram, and is bound thereby as much

CAMPBELL v. WESTON BASKET & BARREL CO.      77

Aug. 1915]            Opinion Per MORRIS, C. J.

as if he had answered back in writing:  'I will take the sheep and pay the note.' "

In *Don Yook v. Washington Mill Co.*, 16 Wash. 459, 47 Pac. 964, a logging company owed the plaintiff and the defendant.  The logging company sold a boom of logs to the defendant and the plaintiff proved that, as part of the consideration of the sale, the defendant assumed the debt and agreed to pay it in ninety days.  In that case we said:

"The promise of the defendant to pay the debt due from [the logging company] to respondent was founded upon a consideration moving from [the logging company].  It was therefore an original promise, and not within the statute."

We approved and followed this case in *Gilmore v. Skookum Box Factory*, 20 Wash. 703, 56 Pac. 934, where, as part of the purchase price of the factory, it was verbally agreed to pay a note of $500 made by the vendor, saying:

"The promisor but agrees to pay his own debt, and he ought not to be relieved from it simply because by so doing he incidentally extinguishes the debt of another."

The plaintiff in the case of *Gay v. Schaefer*, 52 Wash. 269, 100 Pac. 334, was the owner of a printing plant.  One Frost and the defendant bought the plant, Schaefer paying cash and Frost giving a note and mortgage.  Schaefer later purchased Frost's interest in the plant and agreed to pay Frost's debt to the plaintiff if he would consent to the sale.  We found that "the promise was made upon consideration that the respondent would consent to a transfer of the mortgaged property from Frost to the promisor.  Consent was given by the respondent, and the transfer was thereupon made. The debt thereby became the debt of the promisor, and is not within the statute of frauds."

In *Davies v. Carey*, 72 Wash. 537, 130 Pac. 1137, the plaintiff was a storekeeper and the defendant a logger.  One Harris took over the defendant's plant on a contract with him to do the logging.  The plaintiff sold supplies to Harris

and asked the defendant to pay him, erroneously thinking that the defendant was employing Harris. Carey told the plaintiff that he, Carey, was going to take over the plant and would pay the bills then due and for subsequent supplies, and to charge the account to him. We held that he was bound to pay them.

In all of these cases it will be noted that the promise was to pay the debt. In none of them was it to see that the debt was paid. We have uniformly held such promises as are shown in these cases to be original and not within the statute. *Wells & Morris v. Brown*, 67 Wash. 351, 121 Pac. 828, Ann. Cas. 1913 D. 317. In this case, there was neither a promise to pay the debt nor the release of a valid lien on the property. This agreement seems to us to have been no more than a promise to answer for the debt of another, and we have uniformly held that such a promise is not enforceable when oral. *McKenzie v. Puget Sound Nat. Bank*, 9 Wash. 442, 37 Pac. 668, 43 Am. St. 844; *Barto v. Phillips*, 28 Wash. 482, 68 Pac. 895; *Goldie-Klenert Dist. Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913 D. 849; *Taylor v. Howard*, 70 Wash. 217, 126 Pac. 423.

The judgment is affirmed.

Fullerton, Chadwick, and Ellis, JJ., concur.