[No. 42276-0-II.   Division Two.   December 18, 2012.]

UNITED FINANCIAL CASUALTY COMPANY, *Respondent*, v. JAMES T. COLEMAN ET AL., *Appellants*.

464

*Salvador A. Mungia II* (of *Gordon Thomas Honeywell LLP*), for appellants.

*Douglas F. Foley* and *Vernon S. Finley* (of *Douglas Foley & Associates PLLC*), for respondent.

¶1 JOHANSON, A.C.J. — A personal injury plaintiff, James T. Coleman, entered into a settlement agreement with the

liable party's insurance company, United Financial Casualty Company (UFCC). A settlement memorandum produced by the parties required Coleman's attorney, Marie Docter, to pay all known liens before releasing Coleman's settlement proceeds. UFCC later sent with the settlement check a settlement confirmation letter modifying the settlement terms, requiring that Docter pay all special damages, including outstanding bills, before releasing settlement proceeds. When Docter released the settlement proceeds to Coleman, Coleman had an outstanding, disputed medical bill at John C. Lincoln Hospital (Lincoln) that UFCC ultimately paid. UFCC then sued Coleman, Docter, and her firm, Briggs & Briggs,[1] claiming that they breached the settlement agreement. The trial court granted UFCC summary judgment and ordered Docter to reimburse UFCC. It also denied Docter's reconsideration motions. The trial court found that Docter breached the settlement agreement and its implied covenant of good faith and fair dealing, and it affirmed a $67,500 damages award to UFCC.

¶2 Docter appeals the trial court's order denying her reconsideration motions, claiming that (1) Lincoln never had a lien against Coleman, (2) Docter never knew of Lincoln's lien, (3) the trial court erred in finding that Docter breached her duty of good faith and fair dealing, and (4) the trial court erred in awarding UFCC $67,500 in damages. We affirm because the trial court did not abuse its discretion in denying Docter's reconsideration motion.

### FACTS

¶3 On October 14, 2006, Coleman was injured in Arizona in an automobile accident involving a vehicle operated by an employee of Sweet Meats LLC. UFCC insured Sweet Meats. After the accident, Coleman received $84,704.44 in

---

[1] Docter appeals on behalf of herself and the vicariously liable Briggs & Briggs. For simplicity, we use "Docter" when referring to Docter and Briggs & Briggs as parties to this litigation.

medical treatment at John C. Lincoln Hospital in Arizona. Following his treatment, Coleman disputed the charges, claiming that the hospital provided inadequate, negligent care.

¶4 Lincoln publicly filed an $84,704.44 lien against Coleman on March 30, 2007 in Maricopa County, Arizona. In July 2007, Lincoln sent a letter to Briggs & Briggs, stating, "[Y]ou will be receiving a letter of representation and a lien from Gammage & Burnham [Lincoln's counsel]." Clerk's Papers (CP) at 223.

¶5 Docter knew that Coleman had received treatment at Lincoln and that Lincoln sought payment of the outstanding bill. Though Coleman owed Lincoln $84,704.44, he directed Docter to offer Lincoln just $25,000 because Coleman believed the treatment was unsatisfactory. Lincoln rejected that offer but said it would resolve Coleman's bill if he paid $67,500. Coleman refused to pay the $67,500.

¶6 On October 6, 2008, Coleman and Docter signed a settlement memorandum. The settlement memorandum stated that Coleman would receive $497,000 from Sweet Meats and that Coleman "will execute a release of all claims and sign an indemnity and hold harmless agreement as to any and all medical expense, liens and/or subrogated claims." CP at 10. The settlement memorandum also stated that Docter "agrees that all known liens or subrogation claims will be satisfied or otherwise resolved out of settlement proceeds and prior to disbursement to plaintiff." CP at 10. The memorandum finally indicated, "The parties will work together to formalize this agreement with appropriate documentation." CP at 54. Four days later, UFCC claims representative Don Edwards followed up the settlement memorandum with a letter to Docter confirming the terms of the settlement agreement. The letter also modified the settlement terms:

> This is a gross settlement inclusive of all special and general damages. Special damages include, but are not limited to wage loss, outstanding bills, liens or subrogated interest. Any sub-

rogated interest shall be handled by you, per the Mahler decision. You agree to satisfy and/or handle all of these special damage interests as part of our settlement agreement.

If you have any questions, or if you believe any of the above information is not in accordance with our agreement, please notify me immediately.

CP at 64. Docter never responded to Edwards's confirmation letter but did cash the accompanying settlement check.

¶7 On October 20, 2008, Coleman signed a hold harmless agreement, releasing Sweet Meats and UFCC of any further claims relating to the automobile accident in exchange for the $497,000. Before releasing the settlement proceeds to Coleman, Docter learned that Washington's Department of Social and Health Services (DSHS) held a subrogation claim for medical benefits paid on Coleman's behalf. Docter spoke with UFCC's Edwards, who stated that he knew of no other liens against Coleman besides the DSHS lien. Edwards also stated that as of October 20, 2008, he had not received a lien from Lincoln. Docter paid the DSHS lien and other undisputed medical bills as Coleman directed. After deducting her own fees and costs, Docter released the remaining proceeds to Coleman. Neither Coleman nor Docter ever received a copy of Lincoln's lien.

¶8 In September 2009, Lincoln sued UFCC in Arizona,[2] and in October UFCC made a claim for repayment on Lincoln's lien against Coleman. When Coleman and Docter refused to pay the bill out of Coleman's settlement proceeds, UFCC paid the hospital the $67,500 it demanded. UFCC then brought this suit against Docter and Coleman in January 2010 for breaching their settlement agreement, among other claims.

¶9 During litigation, the trial court made various rulings. Docter first filed a summary judgment motion to dismiss UFCC's claims for breach of the settlement agreement, unjust enrichment, and misrepresentation. The trial

[2] Lincoln voluntarily dismissed its claim against UFCC in November 2009.

court granted Docter's motion regarding UFCC's unjust enrichment and misrepresentation claims, but it denied her motion regarding UFCC's claim that Coleman and Docter breached the settlement agreement. UFCC then filed its own summary judgment motions, claiming that as a matter of law, Docter and Coleman should have paid Coleman's outstanding hospital bill and, therefore, must reimburse UFCC the $67,500 it paid Lincoln to satisfy Coleman's bill. The trial court granted UFCC's motion.

¶10 UFCC then filed another summary judgment motion.[3] It claimed that the settlement agreement required Docter to pay Lincoln's medical lien and her failure to pay it constituted, as a matter of law, a breach of the settlement agreement. The motion also claimed that the settlement memorandum was not an integrated agreement and that the settlement confirmation letter from Edwards to Coleman expressed that under their settlement agreement, Docter must pay Coleman's outstanding medical bills before releasing the settlement funds. Finally, the motion claimed that Docter breached the duty of good faith and fair dealing and that Docter should not have released the settlement funds to Coleman without first impleading the disputed amount into the court or retaining sufficient funds to cover the disputed bill. The trial court granted UFCC's summary judgment motions.

¶11 Docter then filed two reconsideration motions. The first reconsideration motion claimed that (1) the settlement agreement did not require Docter to pay knowable liens; (2) the ruling was irregular to the extent that it revised or expanded the terms of the settlement agreement; (3) UFCC

---

[3] Docter also filed an additional summary judgment motion on March 30, 2011, claiming that the trial court should dismiss UFCC's complaint because (1) there was no basis to enforce indemnity on the claim that had not been tendered to Docter or Coleman, (2) UFCC's claim should be dismissed where there is no evidence that a valid lien existed at the time of settlement or that Coleman or Docter knew of the lien, and (3) UFCC's claims should be estopped because of its negligent misrepresentation to Coleman and Docter. The record does not show that the trial court ever acted on this motion.

failed to notify Docter of the hospital's lawsuit, never triggering Docter's duty to pay; and (4) Docter acted in good faith. The second claimed that the trial court erred when it did not make a judicial determination that Lincoln's charges were customary and that the "common fund doctrine" should apply to reduce any amount payable to Lincoln.

¶12 The trial court denied both of Docter's reconsideration motions, affirming its ruling that Docter

> breached the covenant of good faith and fair dealing as well as the terms of its settlement agreement with plaintiff in failing to resolve payment of the hospital bill owed to John C[.] Lincoln Hospital before disbursing funds to Defendant Coleman or otherwise hold the funds in trust or implead them into the court until the dispute regarding the hospital bill was resolved.

CP at 467-68. Further, the trial court affirmed its $67,500 award in damages, stating,

> Application of a common fund discount would not be warranted where a common fund for payment of the third-party bill was not preserved[.] Application of any other potential defenses of the defendant(s) regarding the hospital bill would require this court to engage in speculation and/or are not supported by the record before the court[.] The court notes that the sum paid by plaintiff to resolve the claim of John C[.] Lincoln Hospital represents a 20% discount from the amount originally charged by the hospital.

CP at 468. Docter appeals this order denying Docter's reconsideration motions.

## ANALYSIS

### I. LINCOLN HOSPITAL'S LIEN

¶13 Docter first claims that Lincoln never perfected a valid lien under Arizona law. But whether Lincoln ever perfected the lien is inconsequential. Docter relies on the incorrect assumption that the trial court found that the

parties' settlement memorandum was an integrated agreement such that the settlement memorandum, alone, constituted the entire settlement agreement. We disagree with that assumption. Instead, we conclude that the trial court correctly determined, as a matter of law, that the settlement memorandum was not an integrated agreement. And the confirmation letter accompanying the check presented modification terms that Docter accepted when she cashed the settlement check. Therefore, it made no difference whether Lincoln ever perfected its lien against Coleman or whether Docter knew of any perfected lien.

## A. Rules of Law and Standards of Review

¶14 We review summary judgment orders de novo. *Mele v. Turner*, 106 Wn.2d 73, 81, 720 P.2d 787 (1986). Trial courts properly grant summary judgment where the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Questions of fact may be determined on summary judgment as a matter of law only where reasonable minds could reach but one conclusion. *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997). And we review a trial court's order denying a reconsideration motion for a manifest abuse of discretion. *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005), *review denied*, 157 Wn.2d 1022 (2006).

## B. Nonintegrated Agreement

¶15 The parol evidence rule requires that "all conversations and parol agreements between the parties prior to a written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement." *Buyken v. Ertner*, 33 Wn.2d 334, 342, 205 P.2d 628 (1949).

The parol evidence rule, however, applies only to a writing intended by the parties as an integration of their agreement, a writing intended as a final expression of the agreement's terms. *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990). With partially integrated agreements, extrinsic evidence is permitted to prove additional terms as long as those terms are not inconsistent with the written terms. *Berg*, 115 Wn.2d at 670.

¶16 A court may properly determine that a contract is or is not integrated, as a matter of law, only if "(1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Here, Docter rests her arguments on the assumption that the October 6, 2008 settlement memorandum constituted a fully integrated agreement—a final expression of the agreement's terms. But UFCC disagrees, and the trial court concurred with UFCC that the memorandum was not a final expression, as the memorandum lacked an integration clause and stated, "The parties will work together to formalize this agreement with appropriate documentation." CP at 54. Thus, by its express terms, the memorandum was not an integrated agreement. Accordingly, to determine the final terms of the agreement, we must look to extrinsic evidence.

¶17 It does not appear from the record that the parties ever reduced the terms of the memorandum to a formalized written agreement. Nevertheless, "an informally manifested agreement, otherwise sufficient, is binding even though the parties contemplate later execution of a writing." *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc.*, 51 Wn.2d 685, 688, 321 P.2d 266 (1958). Had UFCC sent Docter the settlement check absent the accompanying confirmation letter, the theory that the terms of the settlement memorandum would bind the parties and Docter's claim—that her only responsibility was to pay known liens or subrogation claims—might have merit.

¶18 But, here, UFCC *did* send a letter accompanying the settlement check that clearly and unambiguously altered the terms of the parties' settlement memorandum. In the letter, unlike in the memorandum, UFCC required Docter (as opposed to Coleman) to settle all outstanding medical bills. The law does not preclude a party, like UFCC, from proposing modifications to a negotiated agreement. *See, e.g., M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 590, 998 P.2d 305 (2000) ("It is well established that the offeror is the master of his offer under traditional contract law principles."). And, conversely, the law does not "obligate a party to accept a material change in the terms of its contract." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).

¶19 Nevertheless, Washington law has long adhered to the principle that if the offeree's actions clearly evince acceptance of the offeror's modifications, the offeree is bound by the modified terms of the contract. *See, e.g., Bicknell v. Henry*, 69 Wash. 408, 125 P. 156 (1912).[4] Moreover, "[i]n determining the mutual intention of contracting parties, the unexpressed, subjective intentions of the parties are irrelevant; the mutual assent of the parties must be gleaned from their outward manifestations." *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 854, 22 P.3d 804 (2001). Here, by cashing the settlement check, the only reasonable inference that can be

---

[4] *Bicknell* involved a dispute between two sheep speculators. In that case, Mr. Brenner told Mr. Churchill (an agent for Mr. Henry) via telegram that he had authority to receive Brenner's sheep herd if Churchill satisfied a mortgage Brenner had on the sheep at an Oregon bank. *Bicknell*, 69 Wash. at 411-12. Churchill took the sheep without paying the outstanding mortgage. Ruling that Henry/Churchill breached the contract terms, our Supreme Court held,

It is plain that Mr. Churchill knew of the claim of the plaintiffs upon the sheep, knew the amount of the claim, and that the telegram was a refusal to permit delivery of the sheep unless the claim was paid or assumed. He thereupon took the sheep. It is true he made no verbal or written promise to assume or pay the note, but he quietly took the sheep. He acted upon the authority of the telegram, and is bound thereby as much so as if he had answered back in writing: "I will take the sheep and pay the note."

*Bicknell*, 69 Wash. at 412.

drawn is that Docter agreed to the modified terms set forth in the settlement letter that accompanied that check.

¶20 Therefore, when the trial court granted UFCC's summary judgment motion on the theory that the settlement memorandum was not, itself, an integrated agreement, it validly concluded that the confirmation letter was included in the settlement agreement.

## C. Validity of Lincoln Hospital's Lien

¶21 Docter claims that Arizona's medical lien statutes setting out the procedures for perfecting a medical lien apply here. Specifically, she claims that Lincoln failed to perfect its lien against Coleman; therefore, Lincoln had no lien against Coleman and Docter could never have known of the lien. Docter raised this claim in her first and second unsuccessful summary judgment motions. Then Docter again references the Arizona medical lien statutes in her reconsideration motion brief: "The hospital did not follow the necessary procedures to perfect a lien in Arizona." CP at 463. Docter's argument is not persuasive because the trial court found that the settlement memorandum was not an integrated agreement. The confirmation letter then expressed that the parties' settlement agreement required Docter to pay Coleman's outstanding medical bills, not merely those reduced to liens.

## D. Docter's Knowledge of the Lien

¶22 Docter next claims that genuine issues of material fact exist regarding whether she knew about Lincoln's lien against Coleman. In her reconsideration motion, she claimed that the trial court misconstrued the parties' settlement agreement to include all "knowable" liens, not merely "known" liens. CP at 436. But Docter's claim fails because Docter knew of Coleman's outstanding medical bill, and whether it was reduced to a lien is of no consequence under the confirmation letter summarizing the parties' settlement agreement.

¶23 There is no dispute that Docter knew that Lincoln billed Coleman $84,704.44 for medical services, but Coleman had directed her to offer Lincoln just $25,000.00 because he considered his treatment unsatisfactory. And ultimately, Docter knew that Lincoln refused to accept the $25,000.00 offer and instead sought $67,500.00. She clearly knew Lincoln sought payment on Coleman's outstanding bill. Therefore, Docter cannot demonstrate that the trial court erred in finding that she breached her settlement agreement by not paying Coleman's bill.

## II. Good Faith and Fair Dealing

¶24 Docter also claims that the trial court erred in finding that she breached the implied covenant of good faith and fair dealing because the trial court expanded Docter's duties under the settlement agreement, requiring her to pay attempted, unknown liens. Again, Docter incorrectly relies on the assumption that her settlement obligations included merely a duty to pay known, perfected liens. As discussed above, the settlement memorandum was not an integrated agreement, and under the parties' settlement agreement, Docter had a duty to ensure payment of Coleman's medical bills before releasing Coleman's settlement proceeds.[5]

---

[5] Docter assumed a duty to pay the outstanding medical bills in question through operation of contractual language between the parties, not through her legal representation of Coleman. The *Restatement (Third) of Agency* explains:

An agent who enters into a contract on behalf of a disclosed principal does not become a party to the contract and is not subject to liability as a guarantor of the principal's performance unless the agent and the third party so agree. Thus, in the absence of such agreement, an agent for a disclosed principal who enters into a contract on the principal's behalf is not subject to liability if the principal fails to perform obligations created by the contract. As a consequence, the agent is not a necessary party to breach-of-contract litigation between a disclosed principal and the third party to a contract made by the agent on the principal's behalf.

§ 6.01 cmt. b, illus. 1 (2006). By acting as Coleman's agent in his negotiations with UFCC, Docter did not assume Coleman's obligation to hold UFCC harmless as to any claims for outstanding hospital bills. However, through express contractual terms, the involved parties envisioned Docter settling certain claims prior to

¶25 An implied duty of good faith and fair dealing exists in every contract. *Badgett*, 116 Wn.2d at 569. This duty "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett*, 116 Wn.2d at 569. The duty of good faith and fair dealing requires only that the parties perform in good faith the obligations imposed by their agreement. *See Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 635 n.6, 700 P.2d 338 (1985). The duty of good faith and fair dealing does not inject substantive terms into the parties' contract or create a free-floating duty of good faith unattached to the underlying legal document. *Badgett*, 116 Wn.2d at 569-70.

¶26 The trial court granted UFCC's summary judgment motion that claimed that Docter breached the implied covenant of good faith and fair dealing when she released Coleman's funds "without paying the Lincoln Hospital bill." CP at 202, 433. Docter then unsuccessfully asked the trial court to reconsider its ruling on this issue, claiming that she paid all known liens and UFCC failed to inform her of Lincoln's lien. Now, Docter appeals the trial court's order denying her reconsideration motion, which said:

> [Docter] breached the covenant of good faith and fair dealing as well as the terms of its settlement agreement with plaintiff in failing to resolve payment of the hospital bill owed to John C[.] Lincoln Hospital before disbursing funds to Defendant Coleman or otherwise hold the funds in trust or implead them into the court until the dispute regarding the hospital bill was resolved.

CP at 467-68. Specifically, Docter claims, as she did in her reconsideration motions, that the trial court erred by expanding Docter's obligations under the settlement memorandum because Docter was obligated to pay only known liens, not attempted liens or unknown liens. Docter asserts

---

releasing the settlement funds to Coleman. Accordingly, Docter's liability in this case stems not from her legal representation of Coleman but, instead, from express contractual terms to which she agreed.

that she agreed to pay only known liens, not claims for medical bills not reduced to a lien.

¶27 Because Docter accepted the modified terms of the settlement proposed in UFCC's letter, the trial court did not err, as a matter of law, in ruling that she breached the implied duty of good faith and fair dealing. Here, in cashing the settlement check, Docter agreed to "handle all . . . special damage interests," including "outstanding bills." CP at 64.

¶28 Also, there is no genuine issue of material fact that Docter knew of Coleman's outstanding medical bill at Lincoln and still failed to pay it before releasing Coleman's settlement proceeds. Docter does not demonstrate that the trial court expanded her duties under the settlement agreement or abused its discretion in denying her reconsideration motion on this issue. She knew Coleman had outstanding medical bills from Lincoln, and she knew that Lincoln sought payment of $67,500 for the medical services that it supplied Coleman. Because Coleman disputed his outstanding Lincoln medical bill, the trial court found that Docter did not necessarily need to pay the bill; but, she should have retained the amount in dispute from the settlement proceeds she released to Coleman until Coleman and Lincoln resolved the dispute. Ultimately, Docter does not demonstrate that the trial court expanded her duties under the settlement agreement or abused its discretion in denying her reconsideration motion on this issue.

III. Amount of Damages

¶29 Docter next asserts that the trial court erred in entering a $67,500 judgment against her because Lincoln was entitled to recover only customary charges for care and treatment. Docter fails to demonstrate an abuse of discretion.

¶30 We review for abuse of discretion a trial court's ultimate remedy. *In re Marriage of Farmer*, 172 Wn.2d 616, 624, 259 P.3d 256 (2011). A trial court abuses its

discretion when its decision or order is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009). A trial court abuses its discretion if it awards damages based upon an improper method of measuring damages. *Farmer*, 172 Wn.2d at 625.

¶31 In the trial court's order denying Docter's reconsideration motion, it affirmed its award of damages, explaining that the award "equates to the amount paid by plaintiff to settle and compromise the claims of John C[.] Lincoln Hospital." CP at 468. This language explains how the trial court arrived at its award of damages. The $67,500 was the cost of the services Lincoln provided to Coleman. Accordingly, Docter does not demonstrate that the trial court abused its discretion in setting damages at $67,500 and denying her reconsideration motion on this issue.

¶32 We affirm.

Quinn-Brintnall and Penoyar, JJ., concur.