IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KEVIN F. AND LINDA SULLIVAN,<br>husband and wife,<br><br>                  Appellants,<br><br>       v.<br><br>SKINNER & SAAR, P.S.,<br><br>                  Respondent,<br><br>CHRISTON C. SKINNER and JANE<br>DOE SKINNER; and DOUGLAS A.<br>SAAR and JANE DOE SAAR,<br><br>                  Defendants. | No. 77516-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br>FILED: January 28, 2019 |

CHUN, J. — Kevin and Linda Sullivan shared an easement with their neighbors Mark and Linda Bressler.[1] Douglas Saar, of the law firm Skinner & Saar, briefly represented the Sullivans and provided advice about use of the easement. The Sullivans eventually lost their easement through an action to quiet title (the Bressler Lawsuit). The Sullivans then brought a legal malpractice lawsuit against Sullivan & Saar for damages based on Saar's admittedly incorrect legal advice. Upon Sullivan & Saar's motion for summary judgment, the trial court concluded that collateral estoppel barred relitigation of issues pertaining to abandonment of the easement. As a result, the trial court determined the

---

[1] This opinion refers to certain parties by their first names to avoid confusion. We intend no disrespect.

Sullivans could not meet their burden to prove proximate cause as a matter of law and granted summary judgment for Skinner & Saar. We affirm.

I.
BACKGROUND

The Sullivans and Bresslers own neighboring waterfront homes on Whidbey Island. At purchase, the Sullivans were told a mutual easement encumbered a five-foot strip of property on either side of their common boundary with the Bresslers. The easement was set forth in a "Declaration for Joint Use of a Boat Launch" and recorded with the Island County Auditor on July 24, 2006. However, the Sullivans' statutory warranty deed omitted the easement.

In September 2011, Linda asked Saar for legal advice on how to begin using the easement. Because the statutory warranty deed did not list the easement, Saar failed to locate it. Saar's title expert also failed to locate the easement. On September 23, 2011, Saar relayed this information to Linda. Linda wanted to relocate a fence from five feet inside their property line to the property line, and Saar approved the move.

The Sullivans began to relocate their existing chain link fence to the middle of the easement between the two properties. By October 5, 2011, the Sullivans had installed fence poles set in concrete in the easement, followed soon after by chain-link fencing along the poles.

The Bresslers' attorney, Carolyn Cliff, contacted Saar about the newly constructed fence interfering with the easement on October 19, 2011. Saar explained to Cliff that no easement benefitted the properties and suggested they

could arrange to record a mutual easement on behalf of their clients. That same day Saar relayed this information to Linda who replied, "I am not interested in sharing anything with Mark Bressler as he is a liar and I would always be concerned with his lack of guidance over his handicap [sic] child which he can't control. I have a wooden fence going between the rest of the property line so there will be no visual whatsoever." Linda inquired as to whether the Bresslers could sue. Saar replied that they could not sue without an easement.

On October 24, 2011, Cliff sent Saar a letter confirming a boat launch easement existed and included a copy of the easement as recorded immediately before the sale of the properties. The Bresslers agreed to consider the placement of the fence in the easement as a mistake based on incorrect information, and requested the Sullivans remove the fence or agree to extinguish the easement by November 4, 2011.

Saar e-mailed the Sullivans on October 26, 2011 to inform them of the existence of the easement. Linda told Saar to delay responding to Cliff, stating, "Keep them humming . . . (you know my long term wishes)." Meanwhile, they continued construction of their fence.

Cliff mailed another letter to Saar on November 9, 2011, noting the Sullivans not only maintained their chain-link fence but installed a taller, solid wooden fence after her first letter. The letter confirmed the Bresslers' willingness to extinguish the easement and included the written extinguishment instrument for the Sullivans' signatures. The Sullivans informed Saar they would sign the papers, but "we are in no hurry, as we are going to try to reimburse some of the

3

$30,000 that will be out of our pocket by the time this is over and we actually have a boat ramp to use."

In late November 2011, Saar sent a demand letter to the title company requesting payment of the Sullivans' attorney fees related to the easement. Saar e-mailed Linda advising her they could not recoup any costs for the fence or a new boat ramp, but he hoped to obtain some compensation for the title company's failure to identify the easement. Saar also reminded Linda they needed to sign the extinguishment instrument. Linda failed to respond to the e-mail for several days. When Saar e-mailed again to set a time to sign the documents, Linda informed him they were unavailable until mid-December.

Saar sent another e-mail on December 7, expressing concern about jeopardizing the agreement with the Bresslers. He noted Cliff's increasing frustration with the situation, especially because Kevin had been home despite the claims of unavailability. Saar also informed Linda of the title company's denial of their claim. In response, Linda replied, "I never said Kevin was out of town, I said we were unavailable, and will be until mentioned."

Saar renewed the request for damages from the title company in a responsive letter sent December 8, 2011. On December 19, 2011, Saar notified the Sullivans that the title company agreed to pay $3,951 for the claim and reminded them they needed to sign the extinguishment. The Sullivans responded they would not be signing the proposed extinguishment, noting "[d]ue to recent conclusions, we feel this matter requires further investigation . . ." Saar received no further communication from the Sullivans despite repeated attempts

4

to contact them. On January 12, 2012, Saar received a letter from the Sullivans terminating his representation and requesting that he forward their file to another law firm.

On February 7, 2012, new counsel for the Sullivans informed Cliff that they agreed to move their fence out of the easement and maintain their rights to the easement. The parties engaged in unsuccessful mediation in April 2012. The Bresslers attempted to settle the dispute, offering $5,000 toward the estimated $15,000 cost of a new boat launch on the Sullivan property. The Bresslers also relayed their intention to seek a judicial determination on the abandonment issue if the parties could not come to an agreement. But as of May 24, 2012, the gate and a portion of the fencing continued to block a part of the easement.

In June 2012, the Bresslers filed an action to quiet the Sullivans' title to the easement. During the pendency of that litigation, the Sullivans rejected the title company's settlement offer as secured by Saar, and requested indemnification in the Bressler Lawsuit and $27,162.77 in damages for failure to identify the boat launch declaration in the title policy.

The Sullivans filed this malpractice case against Skinner & Saar in June 2013, seeking damages of $2.25 million.[2] Soon after, the Sullivans filed suit against Cliff for $5 million. The Sullivans eventually agreed to dismiss the case against Cliff.

---

[2] The lawsuit originally named Skinner & Saar, Christon C. Skinner and Jane Doe Skinner, and Douglas A. Saar and Jane Doe Saar as defendants. The individual defendants were dismissed.

The Bressler Lawsuit proceeded to trial in December 2013. The trial court determined the Sullivans had abandoned the easement through their actions:

> The court has found that the Sullivans' installation of a fence along the property line was unequivocal, decisive, and inconsistent with the continued existence of the easement, and that, at that point, the Sullivans abandoned the easement. The Sullivans' actions in finishing the fence installation after receiving verification that the easement had been recorded were intentional. Their continued encroachment into the easement thereafter were also unequivocal and decisive and inconsistent with the continued existence of the easement.

The trial court also defined certain material requirements the Sullivans could fulfill to reinstate the easement.

The Bresslers appealed the portion of the trial court's order allowing reinstatement of the abandoned easement.[3] The Sullivans did not file a cross appeal. Neither party assigned error to the trial court's findings of fact on the issue of the Sullivans' intentional installation of the fence. This court reversed in part, affirming abandonment of the easement but concluding the trial court's order allowing potential reinstatement of the easement lacked legal basis. The Washington Supreme Court denied review. In February 2016, the trial court entered a final order extinguishing the boat launch easement.

In August 2017, Skinner & Saar filed a motion for summary judgment in this malpractice suit. The trial court concluded that the prior factual findings in the Bressler Lawsuit estopped the Sullivans from relitigating the facts leading to

---

[3] Bressler v. Sullivan, No. 72027-9-I, (Wash. Ct. App. June 29, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/720279.pdf, review denied, 184 Wn.2d 1027 (2016).

6

the Sullivans' abandonment of the easement. As a result, the trial court granted summary judgment for Skinner & Saar. The Sullivans timely appeal.

## II.
## DISCUSSION

The Sullivans filed a legal malpractice lawsuit against Skinner & Saar. To establish a claim for legal malpractice, the Sullivans must prove the following:

> (1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). The trial court granted summary judgment for Skinner & Saar because the Sullivans could not meet their burden on proximate causation.

Summary judgment is appropriate "if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002). The court must consider the facts and inferences in the light most favorable to the nonmoving party. Jones, 146 Wn.2d at 300. Questions of fact may be determined as a matter of law where reasonable minds could reach only one conclusion. United Fin. Cas. Co. v. Coleman, 173 Wn. App. 463, 471, 295 P.3d 763 (2012).

Appellate courts review an order of summary judgment de novo, performing the same inquiry as the trial court. Jones, 146 Wn.2d at 300. The court may affirm summary judgment on any grounds supported by the record.

Blue Diamond Group Inc. v. KB Seattle 1, Inc., 163 Wn. App. 449, 453, 266 P.3d 881 (2011).

A. Collateral Estoppel[4]

Collateral estoppel "promotes the policy of ending disputes by preventing the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present the case." McDaniels v. Carlson, 108 Wn.2d 299, 303, 738 P.2d 254 (1987). Collateral estoppel, or issue preclusion, applies when the subsequent suit involves a different claim but the same issue. Lemond v. State, Dept. of Licensing, 143 Wn. App. 797, 804, 180 P.3d 829 (2008). The party invoking collateral estoppel must establish the following:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 307, 96 P.3d 957 (2004).

The Sullivans contend collateral estoppel does not apply because the trial court never adjudicated any of the elements of their legal malpractice claim. We disagree and conclude the Bressler Lawsuit satisfies the requirements for collateral estoppel.

---

[4] As a threshold issue, the Sullivans contend the trial court erred by considering collateral estoppel because Skinner & Saar failed to properly raise the issue in their motion for summary judgment. However, Skinner & Saar's motion for summary judgment mentions collateral estoppel in the body of the motion and it discusses the issue in more depth in the appendix.

### 1. Identity of the Issues

Collateral estoppel requires identity of the issues in the current and prior proceedings. The issue decided in the prior adjudication must be identical to the one at hand in the current matter. McDaniels, 108 Wn.2d at 305. Collateral estoppel extends only to "'ultimate facts', i.e. those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim." McDaniels, 108 Wn.2d at 305. Collateral estoppel precludes only those issues that have been actually litigated and determined. McDaniels, 108 Wn.2d at 305.

The Sullivans contend the claims are not identical because the trial court did not adjudicate the issue of Saar's negligence in the Bressler lawsuit. This argument confuses collateral estoppel with res judicata (or claim preclusion). The latter bars relitigation of the same cause of action between the same parties to a prior judgment. Lucas v. Velikanje, 2 Wn. App. 888, 893, 471 P.2d 103 (1970). Collateral estoppel requires identity of issues, not claims. Therefore, the fact that the Bressler Lawsuit did not involve litigation of Saar's alleged negligence is irrelevant. For collateral estoppel to apply, the Bressler Lawsuit must have resolved an ultimate fact directly at issue in the current malpractice action.

Here, the facts regarding the Sullivans' intentions and actions with respect to the easement relate directly to the central issue of the malpractice lawsuit— whether Saar's failure to locate a record of the easement, and the advice resulting from this failure, caused the Sullivans to lose their easement and incur

damages. The Bressler Lawsuit established that the Sullivans' actions—namely, completing installation of their fence and continuing to encroach after receiving verification of the easement—were intentional and inconsistent with the existence of the easement. Bressler, No. 72027-9-I, Slip Op. at 6. The trial court and appellate decisions acknowledged Saar initially mistakenly informed the Sullivans that there was no easement. Bressler, No. 72027-9-I, Slip Op. at 2. But both courts attributed abandonment of the easement to the Sullivans' actions: "[T]he Sullivans' actions after being advised that an easement was recorded were intentional. After receiving verification that the easement was recorded, Ms. Sullivan nevertheless continued with the installation of the fence inside the easement." Bressler, No. 72027-9-I, Slip Op. at 8. These prior decisions resolve the issue of causation of the Sullivans' loss of their easement.

Lucas discusses a similar scenario involving a legal malpractice claim. Lucas brought a malpractice claim against her deceased husband's lawyer alleging malpractice for his failure to discover and preserve evidence of fraud and undue duress in the execution of an irrevocable trust. Lucas, 2 Wn. App. at 892. A prior lawsuit between Lucas and her stepson to contest the trust resulted in a jury determination of no fraud, undue influence, or misrepresentation in the execution of the trust. Lucas, 2 Wn. App. at 892. Based on the jury's conclusion in the prior litigation, the court granted summary judgment on the malpractice claim reasoning "no charge of malpractice would lie against defendant for his failure to discover a fraud that did not exist." Lucas, 2 Wn. App. at 892-93. On

review, the appellate court agreed with this application of collateral estoppel. Lucas, 2 Wn. App. at 894.

Like the case at hand, the prior litigation in Lucas did not adjudicate the issue of legal malpractice. However, the prior case conclusively resolved an issue central to the malpractice claim—whether the attorney should have discovered an instance of fraud. Similarly, the Bressler Lawsuit conclusively resolved the issue of the facts underlying the Sullivans' abandonment of the easement. This conclusion has direct bearing on any consideration of the Sullivans' malpractice claim against Saar. Thus, the issue at the heart of the current case is identical to an "ultimate fact" in that case.

### 2. Final Judgment on the Merits

The Sullivans argue their case fails to satisfy the final judgment on the merits element because the malpractice issue was not actually litigated. Once again, this argument confuses res judicata and collateral estoppel. The court need not have adjudicated the negligence claim for collateral estoppel to apply to an issue in the case. Collateral estoppel requires only that the earlier proceedings ended in a judgment on the merits. See Christensen, 152 Wn.2d at 307. The parties do not dispute that the Bressler Lawsuit ended in a final judgment on the merits.

### 3. Party to the Earlier Proceedings

The Sullivans claim a lack of identity of the parties because Skinner & Saar were not a party to the Bressler lawsuit. Skinner & Saar points out that collateral estoppel does not require identical parties. Skinner & Saar is correct.

11

The modern doctrine of collateral estoppel does not require mutuality of parties. Simpson Timber Co. v. Aetna Cas. & Sur. Co., 19 Wn. App. 535, 540, 576 P.2d 437 (1978). "It is sufficient that the party against whom the plea of collateral estoppel is asserted . . . is a party or in privity with a party to the prior litigation." Simpson Timber Co., 19 Wn. App. at 540. Additionally, "[t]he party urging collateral estoppel as a defense may be a stranger to the prior adjudication so long as the application of the doctrine does not work an injustice." Simpson Timber Co., 19 Wn. App. at 540.

Here, the Sullivans were a party to the Bressler Lawsuit and may be estopped on issues litigated in that case. Lucas is instructive. Although the attorney had not been party to the original litigation, the court determined collateral estoppel applied in the subsequent legal malpractice suit grounded on facts related to the original case. Lucas, 2 Wn. App. at 894-95.

### 4. Injustice

The party employing defensive collateral estoppel must demonstrate its application would not cause deprivation of due process by barring further litigation on the issue. See Simpson, 19 Wn. App. at 540. This element concerns whether the parties to the earlier proceeding received a full and fair hearing on the issue in question. Thompson v. State Dept. of Licensing, 138 Wn.2d 783, 795, 982 P.2d 601 (1999). Evaluation of whether collateral estoppel applies concerns whether the party against whom estoppel is asserted had the motivation and opportunity to fully and fairly present its case. Simpson Timber

Co., 19 Wn. App. at 540; See Hanson v. City of Snohomish, 121 Wn.2d 552, 563, 852 P.2d 295 (1993).

Unquestionably, the Sullivans received a full hearing on the facts relating to abandonment of the easement. The Bressler Lawsuit went through trial, appeal, and petition for review in the Washington Supreme Court. Because their easement was at stake, the Sullivans had substantial motivation to fully litigate the issues pertaining to their actions. Therefore, application of collateral estoppel would not result in injustice.

The issue of the Sullivans' actions pertaining to their easement meets the four elements of collateral estoppel. The trial court did not err in applying issue preclusion in this case.

B. Causation

The Sullivans claim genuine issues of material fact exist as to whether Skinner & Saar's actions proximately caused their damages. The trial court found the Sullivans could not satisfy their burden of proof on causation after application of collateral estoppel. We agree.

Proximate causation consists of two elements—legal causation and cause in fact. Legal causation "rests on considerations of policy and common sense as to how far the defendant's responsibility for the consequences of its actions should extend." Taggart v. State, 118 Wn.2d 195, 226, 822 P.2d 243 (1992). Cause in fact requires the plaintiff to establish the act at issue likely caused the injury. Nielson v. Eisenhower & Carlson, 100 Wn. App. 584, 591, 999 P.2d 42 (2000). Put another way, "the act produced in a direct unbroken sequence which

would not have resulted had the act not occurred." Hertog v. City of Seattle, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999). In most cases, the question of cause in fact is for the jury. Daugert v. Pappas, 104 Wn.2d 254, 257, 704 P.2d 600 (1985). "It is only when the facts are undisputed and inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that this court has held it becomes a question of law for the court." Daugert, 104 Wn.2d at 257.

The Bressler Lawsuit concluded that the Sullivans' actions led to their loss of the easement:

> The Sullivans' installation of a fence along the property line, down the middle of the easement, was unequivocal, decisive, and inconsistent with the continued existence of the easement. At that point, the Sullivans abandoned the easement. The Sullivans' decision to relocate the fence to the middle of the easement after they were mistakenly told that there was no recorded easement appears to have been done in the mistaken belief that the easement had not been executed or recorded, as acknowledged by the Bresslers. However, the Sullivans' actions after being advised that an easement was recorded were intentional. After receiving verification that the easement was recorded, Ms. Sullivan nevertheless continued with the installation of the fence inside the easement.

Bressler, No. 72027-9-I, Slip Op. at 8. Thus, the sequence of events leading from Saar's misinformation to abandonment was broken by the Sullivans' acts, eliminating any issue of material fact as to cause in fact. Without demonstrating cause in fact, the Sullivans cannot establish a legal malpractice claim. As a result, the trial court properly concluded the Sullivans could not meet their burden

on proximate causation and granted summary judgment in favor of Skinner & Saar.[5]

Affirmed.

Chun, J.

WE CONCUR:

Andrus, J.

Mann, A.C.J.

---

[5] In light of our conclusion, we need not reach the additional issues raised by the Sullivans.